[No. B006612. Second Dist., Div. Two. Sept. 11, 1985.]

STENA KATONA et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

54

**COUNSEL**

Allred, Maroko, Goldberg & Ribakoff, John S. West and Thomas J. Mikos for Plaintiffs and Appellants.

McDonald & Harmon, Greines, Martin, Stein & Richland, Kent L. Richland, Regina Covitt, David M. Hillings, Kirk H. Nakamura, Douglas Fee and Shield & Smith for Defendants and Respondents.

**OPINION**

**COMPTON, Acting P. J.**—Plaintiffs Stena and Joseph Katona, the parents of decedent Tara Ann Katona, instituted this action against defendants County of Los Angeles and San Fernando Valley Community Mental Health Center, Inc., among others, to recover damages for the alleged wrongful death of their daughter. The second amended complaint essentially averred that defendants had breached a duty of due care in failing to take reasonable steps to prevent decedent from taking her own life. The trial court sustained

defendants' demurrer without leave to amend and this appeal follows.[1] We affirm.

■   On appeal from a judgment rendered following the sustaining of a demurrer the primary issue is whether, considering all allegations in the complaint to be true, plaintiffs have stated facts sufficient to entitle them to some relief. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187], *Baldwin* v. *Zoradi* (1981) 123 Cal.App.3d 275, 279 [176 Cal.Rptr. 809].) Unless clear error or abuse of discretion is demonstrated, however, the trial court's dismissal of the action will be affirmed on appeal. (*Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1076 [195 Cal.Rptr. 576].) With these standards in mind, we set forth the facts as derived from plaintiffs' second amended complaint.

Decedent Tara Ann had a history of multiple hospitalizations for mental illness, beginning in late April 1983 when she was admitted to Camarillo State Hospital. She was discharged after five days of treatment.

Approximately one month later, on May 20, 1983, decedent was taken to Olive View Medical Center (Olive View), a mental health facility operated by defendant County of Los Angeles for treatment of various unspecified emotional problems. She was discharged on May 27, 1983, and then admitted for additional therapy at Somos Amigos, a facility owned and operated by defendant San Fernando Valley Community Mental Health Center. After a 15-day stay, decedent was again discharged.

On July 20, 1983, decedent made a downpayment on a Colt .38 special handgun to National Gun Sales, Inc. (National Gun) at its Northridge store, but was not then given possession of the weapon. On the same date, decedent also executed a document entitled "Dealer's Record of Sale of Revolver or Pistol, Number J231505," which was signed as well by an employee of the store. Duplicate copies of the document were sent by National

---

[1] Plaintiffs actually appeal from the order sustaining defendants' demurrer to the second amended complaint. With too great frequency we are forced to point out that an order sustaining a demurrer is nonappealable. Code of Civil Procedure section 904.1 clearly states that, except in the case of a very few and specifically described orders, an appeal lies only from a final judgment. It would seem that before embarking on the appeal process, counsel would at least take the time to read section 904.1. At the risk of encouraging the continuation of this sloppy practice we will, for the purpose of judicial economy, once again indulge in the fiction of treating the order as including a judgment of dismissal and dispose of the matter as if the appeal were properly perfected. (*Beazell* v. *Schrader* (1963) 59 Cal.2d 577 [30 Cal.Rptr. 534, 381 P.2d 390]; *California State Employees' Assn.* v. *State of California* (1973) 32 Cal.App.3d 103, 106, fn. 1 [108 Cal.Rptr. 60]; 6 Witkin Cal. Procedure (2d ed. 1971) Appeal, § 337, p. 4316.)

Gun to the California Department of Justice and local law enforcement officials, all of whom received the copies prior to September 1983.

One day after making the downpayment on the gun, July 21, 1983, decedent was admitted to Olive View for treatment of various mental illnesses, including suicidal ideation. At some point during the admission process, employees of the medical center allegedly found among decedent's personal belongings a layaway ticket from National Gun for the revolver. Decedent remained at Olive View for 13 days, until August 2, 1983, at which time she was discharged and taken to Somos Amigos for further analysis. She was released four days later.

On the day following her discharge Tara Ann attempted suicide with a handgun belonging to a friend. As a result, she was taken first to Somos Amigos, then briefly to Olive View, and finally to Camarillo. As in the past, she was treated for a variety of mental illnesses, including suicidal ideation and attempted suicide.

On September 13, 1983, one day before decedent was to be released from Camarillo, her mother, plaintiff Stena Katona, telephoned National Gun's Northridge store and informed an employee that Tara Ann had recently made a downpayment on a handgun, that she was currently a mental patient at Camarillo for attempting to take her own life, and that she would be discharged from that facility shortly. During the conversation, plaintiff requested that the store not sell the revolver or any other weapon to her daughter. The person to whom she spoke assured plaintiff that no gun would be sold to decedent and that all necessary steps would be taken to negate and retrieve Tara Ann's application to purchase the weapon.

Although the complaint does not so state, plaintiff's counsel conceded at oral argument that someone connected with Olive View notified the parents that the ticket had been found in decedent's possession.

As scheduled, decedent was released from the state mental institution on September 14, 1983. The following day she visited National Gun's Northridge store and was allowed to complete her purchase of the handgun. Sometime during the next 24 hours Tara Ann used the revolver to commit suicide.[2]

Based upon the foregoing, plaintiffs alleged, inter alia, that both Olive View (i.e., defendant County of Los Angeles) and Somos Amigos

---

[2]Defendant National Gun Sales, Inc., along with several other individual defendants, remain parties to whatever action survived the demurrers of the County of Los Angeles and San Fernando Valley Community Mental Health Center.

"negligently failed to inform the California Department of Justice and/or the California Department of Mental Health and/or Camarillo State Hospital and/or National Gun and/or other law enforcement officials" of Tara Ann's suicidal tendencies and that as a proximate result of said failure she was given possession of the handgun and committed suicide.

In sustaining the demurrers, the trial court specifically found that defendants were under no duty to disclose decedent's psychological condition to any third party, and that in the event such a duty did exist the conduct of the gun store in allowing Tara Ann to purchase the weapon constituted a superseding cause of decedent's suicide.

Insofar as is relevant here the deadly weapons control law makes it a crime for an ex-felon or a narcotic addict to possess a concealable firearm (Pen. Code, § 12021). The corollary to that restriction is that it is also a crime for anyone to sell, deliver or transfer such a weapon to a person whom the former has reason to believe is within one of those categories. (Pen. Code, § 12072.)

A seller of concealable firearms must report any such sale to the California Department of Justice and wait 15 days before delivering the weapon to the purchaser. (Pen. Code, §§ 12072, 12076.) If the Department of Justice determines that the purchaser is in one of the proscribed categories, it must notify the dealer immediately. (Pen. Code, § 12076.)

As regards persons with mental disorders, the Department of Justice is required to notify a dealer if the purchaser is a mental patient confined to a mental hospital or on a leave of absence from such hospital or is a person who has been adjudged by a court to be a *danger to others*. (Welf. & Inst. Code, §§ 8101, 8103.)

Since decedent was not within one of the statutorily proscribed categories, the Department of Justice would not and was under no duty to notify National Gun of any impediment to the delivery of the firearm, and National Gun violated no statute when it delivered the gun to the decedent.

The issue of whether National Gun's delivery of the weapon to the decedent nevertheless constituted actionable negligence is not before us. It is clear, however, that the thrust of the deadly weapon control scheme is to prevent harm to third persons and is not concerned with harm to the gun possessor himself.

In that context we consider whether defendants, as plaintiffs urge, had any duty to notify National Gun, the Department of Justice, or other law

enforcement agencies of decedent's suicidal bent. Plaintiffs eschew any claim that defendants' liability rests on the release of decedent from custody or the failure to otherwise directly control decedent's conduct. That position is well taken.

Government Code section 856, subdivision (a)(3) provides that public entities and their employees are not liable for any injury "resulting from determining in accordance with any applicable enactment: . . . Whether to parole, grant a leave of absence to, or release a person confined for mental illness or addiction." (See *Hernandez* v. *State of California* (1970) 11 Cal.App.3d 895 [90 Cal.Rptr. 205]; *Kravitz* v. *State of California* (1970) 8 Cal.App.3d 301 [87 Cal.Rptr. 352]; *Goff* v. *County of Los Angeles* (1967) 254 Cal.App.2d 45 [61 Cal.Rptr. 840].)

■ While it has been held that because of a hospital's duty to supervise and protect its patients, a wrongful death action will lie where the decedent committed suicide while undergoing psychiatric treatment and while confined to a hospital (*Vistica* v. *Presbyterian Hospital* (1967) 67 Cal.2d 465 [62 Cal.Rptr. 577, 432 P.2d 193]; *Meier* v. *Ross General Hospital* (1968) 69 Cal.2d 420 [71 Cal.Rptr. 903, 445 P.2d 519]) there is no justification for extending that duty beyond the patient's unconditional release. (See *Harland* v. *State of California* (1977) 75 Cal.App.3d 475 [142 Cal.Rptr. 201]; *Paradies* v. *Benedictine Hospital* (1980) 7 App.Div.2d 757 [431 N.Y.S.2d 175, 19 A.L.R.4th 1].)

■ In the instant case, decedent's suicide occurred more than six weeks after she had been discharged from either the county's mental health facility or Somos Amigos. Moreover, there is no indication whatsoever that either hospital had any contact with decedent or her parents after her unconditional release. Under the circumstances, there would be no basis for imposing a duty on defendants to control decedent's actions in an attempt to prevent her suicide.

■ It is a fundamental principle of tort law that persons are liable for injuries caused by their failure to exercise reasonable care. (Civ. Code, § 1714, subd. (a); *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]; *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112-113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) To establish liability, however, there must be more than a mere failure to exercise care and a resulting injury. There must be a legal duty owed to the person injured to exercise care under the circumstances, and a breach of that duty must be the proximate cause of the resulting injury. The determination that a duty exists is therefore an essential precondition to liability founded on negligence. (See *Hooks* v. *Southern Cal.*

*Permanente Medical Group* (1980) 107 Cal.App.3d 435, 443 [165 Cal.Rptr. 741].) ▆ Legal duties, however, are not "'discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done.'" (*Thompson* v. *County of Alameda, supra,* 27 Cal.3d at p. 750.) The imposition of a duty is ultimately a question of fairness involving a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution. (See *Totten* v. *More Oakland Residential Housing, Inc.* (1976) 63 Cal.App.3d 538, 545 [134 Cal.Rptr. 29].)

*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166] is of no comfort to the plaintiffs. There the mental patient posed a danger to third persons and made threats to do violence to a specific individual. It was there held that a therapist had a duty to that specific individual to take reasonable steps to prevent harm to him or her including the duty to warn him or her of the threats.

The court in *Tarasoff,* mindful of the psychotherapist privilege, took care to limit its holding to the situation where the interest in the confidentiality of patient information was outweighed by the strong public interest in preventing a violent assault.

In *Johnson* v. *County of Los Angeles* (1983) 143 Cal.App.3d 298 [191 Cal.Rptr. 704], decedent was arrested for driving on the wrong side of the freeway. He told the arresting deputy sheriffs that he was attempting to commit suicide. His wife contacted the deputies and *she told them* of decedent's suicidal tendencies. The deputies assured the wife that decedent would be taken care of. He was later released without notice to the wife. It was there held that a wrongful death action would lie for inducing wife's reliance on official action and for failing to notify the wife of decedent's release thus depriving *her* of the opportunity to try to prevent the suicide.

▆ In the case at bench there were two types of warnings or notice which defendants could have given; (1) a notice to the Department of Justice and/or National Gun that decedent was suicidal, or (2) a notice to the plaintiffs that decedent had arranged to purchase a gun.

Neither *Tarasoff, supra,* nor *Johnson, supra,* is authority for imposing a duty on defendants to give notice to the Department of Justice or National Gun. In order for plaintiffs to prevail they must establish that defendants owed a duty to them, and not to the public generally or to some amorphous group of third parties.

To the extent that *Johnson* v. *County of Los Angeles, supra,* is authority for imposing a duty on defendants and in favor of plaintiffs to warn the

latter of the pending sale of the weapon—the only possible theory of liability in the case—plaintiffs concede that that duty was performed.

The judgment is affirmed.

Beach, J., and Gates, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 5, 1985. Bird, C. J., was of the opinion that the petition should be granted.