[No. A059240. First Dist., Div. Four. Sept. 15, 1994.]

MICHELE BRAMAN, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

William P. Daly for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Marvin S. Goldsmith, Assistant Attorney General,

Tyler B. Pon and Helen Sweeny Beardsworth, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**POCHÉ, Acting P. J.**—Penal Code section 12076, a part of the Dangerous Weapons' Control Law (Pen. Code, § 12000 et seq.), governs the scope of the investigation to be made by the Department of Justice for the purpose of determining whether an individual is disqualified from obtaining possession of a firearm by sale or otherwise. In 1989 the Court of Appeal in *Gray v. State of California* (1989) 207 Cal.App.3d 151 [254 Cal.Rptr. 581] held that section 12076 did not establish a mandatory duty the violation of which would support a private action for damages under the California Tort Claims Act. (Gov. Code, § 810 et seq.) Today we hold that amendments to section 12076 and other statutes enacted a year later in response to *Gray* do create such a mandatory duty. We also hold that those amendments expand the scope of the Dangerous Weapons' Control Law to guard against self-inflicted injuries. In light of these holdings we conclude that a complaint alleging that the failure of the Department of Justice to conduct the investigation specified by Penal Code section 12076 and thus to prevent acquisition of a firearm by a former mental patient who then commits suicide with that weapon, states a cause of action for wrongful death.

### BACKGROUND

The relevant allegations of the "Complaint For Breach Of Statutory Duty And Wrongful Death" filed by plaintiff Michele Braman are these: Between October 24, 1990, and February 7, 1991, a number of public and private licensed health care providers "treated, held, admitted, committed and diagnosed" plaintiff's husband "pursuant to sections 5150 and 5151 of the . . . Welfare and Institutions Code because he was a danger to himself and to others and, as such, was a person within the classes of person[s] described in sections 8100 and 8103 of the Welfare and Institutions Code."[1] About February 13, 1991, plaintiff's husband purchased a handgun ("a new Rossi, 38 special, model 88, revolver, serial no. W162484") from an Oakland gun shop. Plaintiff's husband took possession of the handgun approximately 15 days later. He used it to "shoot himself in the head" on March 3, 1991, and died from this self-inflicted wound.

Plaintiff further alleged that the State of California breached "duties mandated by the Dangerous Weapons' Control Act intended to protect the

---

[1]Plaintiff alleged the health care providers knew that "[i]mmediately prior to receiving treatment[ ] decedent had attempted suicide," but plaintiff did not extend this allegation to the state.

public, including the decedent and plaintiff herein, from the sale to, transfer to, and/or possession of a firearm by persons who come within the provisions of sections 8100 or 8103 of the Welfare and Institutions Code and to prevent the loss and damage complained of herein by the illegal use of such firearm by such an individual." Among the duties the state allegedly failed to perform were (1) determining whether plaintiff's husband was "a person described in sections 8100 or 8103 of the Welfare and Institutions Code," (2) examining records of the Departments of Justice and Mental Health "in its possession which are necessary to identify persons who come within the provisions of sections 8100 or 8103 of the Welfare and Institutions Code," (3) "request[ing] each public or private mental hospital and institution to submit to the Department of Justice that information with respect to mental patients and former mental patients as necessary to carry out its duties under section 12076 of the Penal Code ([Welf. & Inst. Code,] § 8105)," and (4) blocking the sale of the handgun to plaintiff's husband by notifying the gun dealer and local police that the prospective purchaser was "a person described in sections 8100 or 8103 of the Welfare and Institutions Code."

The state filed a general demurrer to the complaint on the ground that a cause of action was not stated. The state's theory was threefold: (1) Penal Code section 12076 did not establish a mandatory duty, only a discretionary one, (2) whether discretionary or mandatory, the duty was not intended to prevent the type of harm suffered here, and (3) in any event, anything the state did or failed to do was not the proximate cause of any damage to plaintiff. The trial court sustained the demurrer without granting leave to amend.[2] Plaintiff perfected a timely appeal from the judgment of dismissal.

## REVIEW

Plaintiff's theory of governmental liability is predicated on the alleged failure of the state to comply with a mandatory statutory duty. The gateway to recovery is Government Code section 815.6, which provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its

---

[2]Defendant also filed a special demurrer for uncertainty (Code Civ. Proc., § 430.10, subd. (f)), claiming that "plaintiff has failed to set forth an adequate statutory basis for liability." The state does not contend that the trial court erred in failing to sustain the demurrer on this ground, nor could it do so with any hope of success: plaintiff's complaint was more than sufficient to apprise the state what it was up against. (See *Berry* v. *State of California* (1992) 2 Cal.App.4th 688, 691 [3 Cal.Rptr.2d 382]; *Gonzales* v. *State of California* (1977) 68 Cal.App.3d 621, 631 [137 Cal.Rptr. 681].)

failure to discharge the duty . . . ." ■ Before the state will be required to confront a rebuttable presumption of negligence (see *Brenneman* v. *State of California* (1989) 208 Cal.App.3d 812, 816-817, fn. 2 [256 Cal.Rptr. 363]), plaintiff must demonstrate that: (1) the statute which was violated imposes a mandatory duty, (2) the statute was intended to protect against the type of harm suffered, and (3) breach of the statute's mandatory duty was a proximate cause of the injury suffered. (E.g., *MacDonald* v. *State of California* (1991) 230 Cal.App.3d 319, 327 [281 Cal.Rptr. 317]; *State of California* v. *Superior Court* (1984) 150 Cal.App.3d 848, 854 [197 Cal.Rptr. 914].) ■ We examine each element in turn, cognizant that the judgment must be upheld if any one element is missing.

*Whether Penal Code Section 12076 Establishes a Mandatory Duty*

■ The term mandatory, as used in Government Code section 815.6, "refers to an obligatory duty which a governmental entity is required to perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses." (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 908 [136 Cal.Rptr. 251, 559 P.2d 606].) ■ ■ The state relies on *Gray* v. *State of California, supra*, 207 Cal.App.3d 151, as still valid authority for the proposition that Penal Code section 12076 does not impose a mandatory duty upon the Department of Justice. Section 12076 is much different now from what it was when it was construed by the *Gray* court.

When *Gray* was decided in January of 1989 the pertinent portion of Penal Code section 12076 was subdivision (c), which then provided: "If the department [of Justice] determines that the purchaser is a person described in Section 12021 or 12021.1 of this code or Section 8100 or 8103 of the Welfare and Institutions Code, it shall immediately notify the dealer of that fact." (Stats. 1985, ch. 106, § 110, p. 307.) Rejecting an argument that section 12076 as it then read imposed a mandatory duty upon the Department of Justice to "conduct an investigation reasonably designed to reveal whether a person is eligible to possess a handgun," the *Gray* court concluded that section 12076 "permits the department to exercise its discretion to determine how to investigate potential handgun purchasers." (*Gray* v. *State of California, supra*, 207 Cal.App.3d 151 at p. 155.) The court noted that section 12076 "does not describe the type of investigation required," an omission which "suggests that this is a matter left to the discretion of the Department of Justice." (207 Cal.App.3d at pp. 155-157.) The *Gray* court ended its analysis with the observation that the Legislature might wish to revisit this field. (*Id.* at p. 158.)

The Legislature accepted that invitation on three occasions during the course of 1990. After twice making minor and nonsubstantive changes to Penal Code section 12076,[3] the Legislature addressed the nonspecific investigation requirement identified in *Gray*. It amended subdivision (c) to provide in pertinent part: "The department shall examine its records, as well as those records that it is authorized to request from the State Department of Mental Health pursuant to Section 8104[4] of the Welfare and Institutions Code, in order to determine if the purchaser or transferee is a person described in Section 12021 or 12021.1 of this code or Section 8100 or 8103 of the Welfare and Institutions Code. [¶] If the department determines that the purchaser or transferee is a person described in Section 12021 or 12021.1 of this Code or Section 8100 or 8103 of the Welfare and Institutions Code, it shall immediately notify the dealer of that fact."[5] (Stats. 1990, ch. 1090, § 2.)

---

[3](See Stats. 1990, ch. 9, § 8; Stats. 1990, ch. 177, § 2.)

[4]Which has at all pertinent times directed the Department of Mental Health to "make available to the Department of Justice those records that the State Department of Mental Health has in its possession that are necessary to identify persons who come within Section 8100 or 8103. These records shall be made available to the Department of Justice upon request."

[5]Other 1990 amendments give some idea of what among its own records the Department of Justice should examine.

The same enactment which added the danger-to-self disqualification to Welfare and Institutions Code section 8103 (discussed in the next part of this opinion) also specified that facilities handling patients pursuant to the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.) "shall immediately, on the date of admission, submit a report to the Department of Justice . . . containing information which includes, but is not limited to, the identity of the person and the legal grounds upon which the person was admitted to the facility." (Welf. & Inst. Code, § 8103, subd. (f)(2), added by Stats. 1990, ch. 9, § 16.)

Moreover, the same enactment which amended subdivision (c) of Penal Code section 12076, also amended Welfare and Institutions Code section 8105 to provide in pertinent part: "(a) The Department of Justice shall request each public and private mental hospital, sanitarium, and institution to submit to the department that information with respect to mental patients and former mental patients as the department deems necessary to carry out its duties under Section 12076 of the Penal Code. [¶] (b) Upon request of the Department of Justice pursuant to subdivision (a), each public and private mental hospital, sanitarium, and institution shall submit to the department that information with respect to mental patients and former mental patients as the department deems necessary to carry out its duties under Section 12076 of the Penal Code. . . ." (Stats. 1990, ch. 1090, § 6.)

Thus, at least with respect to persons covered by Welfare and Institutions Code section 8103, subdivision (f) since January 1, 1991—the date on which all of the 1990 amendments became effective—the Department of Justice must be deemed to be in direct possession of records sufficient to invoke the department's veto of a firearm application. (Welf. & Inst. Code, § 8103, subd. (f)(2).) This information, which because it is pegged to the date of a patient's admission is prospective only, the department gets without asking. In the same

The Legislature went on to add a new subdivision (e) to Penal Code section 12076 which characterizes the nature of the expanded investigative duty entrusted to the Department of Justice: "Whenever the Department of Justice acts pursuant to this section as it pertains to firearms other than pistols, revolvers, or other firearms capable of being concealed upon the person, its acts or omissions shall be deemed to be discretionary within the meaning of the California Tort Claims Act pursuant to Division 3.6 (commencing with Section 810) of Title 1 of the Government Code."[6] (Stats. 1990, ch. 1090, § 2.)

In determining whether these changes establish a mandatory duty as a matter of law when the subject is pistols, revolvers or other firearms capable of being concealed upon the person, we first look to the revised statutory language as indicative of legislative intent. (E.g., *Nunn* v. *State of California* (1984) 35 Cal.3d 616, 624 [200 Cal.Rptr. 440, 677 P.2d 846].) As we have noted, *Gray* was based on the Court of Appeal's interpretation that the former version of Penal Code section 12076 permitted the Department of Justice to exercise its discretion in deciding how to investigate the background of a handgun purchaser. (*Gray* v. *State of California, supra,* 207 Cal.App.3d 151, 155, 157.) The very essence of discretion is the power to make "comparisons, choices, judgments, and evaluations." (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 749 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].)

With the amendment to subdivision (c) the Department of Justice no longer operates without legislative directive as to the manner and extent to which it must investigate prospective handgun purchasers. The first paragraph of Penal Code section 12076's subdivision (c) now unambiguously specifies what records it is to examine: its own and those it is authorized to request from the Department of Mental Health. The Legislature's specification is preceded by the term "shall," which means that investigation is a mandatory obligation. (See Gov. Code, § 14; *People* v. *Howe* (1987) 191 Cal.App.3d 345, 350 [236 Cal.Rptr. 389].)

The reality that all discretion has been removed from the Department of Justice is underlined by the addition of subdivision (e) to Penal Code section

enactment the department was directed to ask for information from the Department of Mental Health (Welf. & Inst. Code, § 8104) and from public and private health care providers (Welf. & Inst. Code, § 8105). The latter source of information, because it covered "former mental patients," had (until amended effective Jan. 1, 1992; see Stats. 1991, ch. 951, § 10) the potential of providing the Department of Justice with material antedating the department's obligation to ask for it.

[6]Although subdivision (e) is now subdivision (i) of section 12076 (see Stats. 1992, ch. 1326, § 8), for purposes of clarity we will continue to use its original designation.

12076. By specifying that the Department's investigation remains "discretionary within the meaning of the California Tort Claims Act" when directed toward purchasers of firearms "*other than pistols, revolvers, or other firearms capable of being concealed upon the person*" (italics added), the Legislature has made investigations of would-be buyers of "pistols, revolvers, or other firearms capable of being concealed upon the person" nondiscretionary; such investigations are now mandatory.

Reinforcing this reading of the plain language of these changes is the Legislative Counsel's Digest which accompanied their enactment. It explains the Legislature's intention as follows: "[T]he court in *Gray* v. *San Francisco Gun Exchange, Inc.* [*sic*], 207 Cal.App.3d 151, 155, determined, as to concealable firearms, that the department does not have a mandatory duty to conduct an investigation reasonably designed to reveal whether a person is eligible to possess a concealable firearm. [¶] This bill would revise the law to require the Department of Justice to examine its records, as well as other records, as specified, to determine whether the purchaser, as well as the transferee, of a firearm is in a prohibited class." (Legis. Counsel's Dig., Sen. Bill No. 2050.)

Fairly read, the Legislative Counsel's Digest makes plain that the amendments were made in response to *Gray* and were intended to "revise" that decision. *Gray* involved a single question calling for a yes or no answer—did Penal Code section 12076 create a mandatory duty. The only aspect of *Gray* that the Legislature could "revise" was the court's conclusion that the statute did not create a mandatory duty.

In sum, the indicia that the Legislature intended to create a mandatory duty are compelling. First, there is the plain language of subdivisions (c) and (e) of Penal Code section 12076. The Legislature inserted language of unavoidable obligation and specified the nature of that obligation with some precision. It then linked nonperformance of that obligation to liability under the California Tort Claims Act.[7] These changes, made after the *Gray* court found no statutory duty or liability, would ordinarily be presumed to show

---

[7]The express reference to the Tort Claims Act in subdivision (e) can only be read as legislative acceptance that nonperformance of what was being declared a mandatory duty could result in liability to an individual harmed by that nonperformance. This obviously destroys the state's argument that any duty imposed by Penal Code section 12076 runs to the public at large, and not to particular individuals who are only incidental beneficiaries of that duty. (Cf. *Nunn* v. *State of California, supra,* 35 Cal.3d at pp. 625-626.)

This is conclusively shown by the legislative history. In letters dated May 11, 1990, and August 1, 1990, the Attorney General repeatedly objected to certain of the 1990 amendments to Penal Code section 12076 on the ground that "As a matter of public policy, the record

that a change in meaning was intended. (E.g., *Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736, 744-745 [250 Cal.Rptr. 869, 759 P.2d 504]; *Oberlander* v. *County of Contra Costa* (1992) 11 Cal.App.4th 535, 544 [15 Cal.Rptr.2d 182].) The accompanying Legislative Counsel's Digest confirms this general presumption and establishes that the specific intent was to overthrow *Gray* by imposing a mandatory duty on the Department of Justice concerning the investigation of prospective purchasers of concealable firearms.[8] (See *Victoria Groves Five* v. *Chaffey Joint Union High Sch. Dist.* (1990) 225 Cal.App.3d 1548, 1554-1555 [276 Cal.Rptr. 14].) Nothing in the legislative history of these statutes contradicts the plain language of section 12076 which in everyday English demonstrates that a mandatory duty was intended. (See fn. 7 *ante*, p. 352.) Accordingly, the first ground of the state's demurrer is not sound.

---

checks conducted pursuant to Penal Code section 12076 should be viewed as protecting the public as a whole, not conferring a cause of action upon specific individuals." The Legislature obviously thought otherwise, as demonstrated by its rejection of the Attorney General's suggested version of subdivision (e), which would have read: "Notwithstanding any other provision of law, the Department of Justice shall be immune from any liability arising from any act or omission pursuant to this section." (See Assem. Public Safety Com., Staff Analysis of Sen. Bill. No 2050 (1989-1990 Reg. Sess.) p. 4.)

Eliminating the possibility of compensable liability from any breach of section 12076 would strip that statute's subdivision (e) of any useful meaning. There would be no point in the Legislature's taking the trouble to differentiate between what is and is not a discretionary duty for purposes of the California Tort Claims Act if, as the state now contends, the Legislature were dealing with a duty whose breach would never require compensation to individuals.

[8]Moreover, the Legislature's concurrent changes to statutes in the Welfare and Institutions Code establish the scope of the investigative duty it imposed upon the Department of Justice. (See Welf. & Inst. Code, §§ 8103, 8104, 8105, quoted at fns. 4 & 5 *ante*, pp. 350-351.) This court has recognized that "[a]pplication of the rule that statutes in pari materia should be construed together is most justified, and light from that source has the greatest probative force, in the case of statutes relating to the same subject matter that were passed at the same session of the [L]egislature, especially if they . . . take effect on the same day . . . ." (*Stickel* v. *Harris* (1987) 196 Cal.App.3d 575, 590-591 [242 Cal.Rptr. 88] [internal quotation marks omitted].) All of the 1990 amendments fit within this rule.

Undoubtedly, the fact that one of these provisions, Welfare and Institutions Code section 8105, speaks to the Department of Justice requesting "that information . . . *as the department deems necessary* to carry out its duties under Section 12076 of the Penal Code" (italics added) clearly grants some discretion to the department. (See, e.g., *Alsavon M.* v. *Superior Court* (1981) 124 Cal.App.3d 586, 593 [177 Cal.Rptr. 434]; *Verreos* v. *City and County of San Francisco* (1976) 63 Cal.App.3d 86, 108 [133 Cal.Rptr. 649].) That discretion, however, exists only within the limited context of the department's obligation to obtain information "necessary to carry out its duties under Section 12076 of the Penal Code," which is "to determine if the purchaser or transferee is a person described in Section 12021 or 12021.1 of this code or Section 8100 or 8103 of the Welfare and Institutions Code." (Pen. Code, § 12076, subd. (c).) In light of what we hold in this opinion, the department's discretion is restricted to means, not ends. Certainly the scope of such discretion does not include failing to conduct any investigation at all, which is essentially what plaintiff alleges.

*Scope of Protected Injury*

■      The second prong of the state's demurrer was to the nature of the injury suffered here: suicide.   ■    In the state's view, the statutory scheme was not intended to protect against that type of injury, and for that reason, the complaint failed to state a cause of action.

The heart of Penal Code section 12076 is subdivision (c), which lists categories of persons the Legislature has determined should not be allowed to purchase firearms. (See also Pen. Code, § 12072, subd. (a)(2).) The categories are created by statutory designation: "a person described in" Penal Code section 12021 or 12021.1, or in Welfare and Institutions Code section 8100 or 8103. Our concern is with Welfare and Institutions Code section 8103.

Welfare and Institutions Code section 8103, like Penal Code section 12076, is a legislative list of categories of persons who are not allowed to purchase firearms. The pre-1990 version of section 8103 exempted from firearm purchasing any person: (1) who had been adjudicated "a danger to others as a result of mental disorder or mental illness[] or . . . a mentally disordered sex offender," (2) who had been found not guilty by reason of insanity, (3) who had been found to be mentally incompetent to stand trial, and (4) who had been placed under a conservatorship "because the person is gravely disabled as a result of a mental disorder or impairment by chronic alcoholism."

That version of Welfare and Institutions Code section 8103 was interpreted by the Court of Appeal in *Katona* v. *County of Los Angeles* (1985) 172 Cal.App.3d 53 [218 Cal.Rptr. 19]. At issue in *Katona* was whether the delineated categories included a woman who had committed suicide with a handgun she had purchased after being released from a county mental health facility. After concluding that they did not the *Katona* court held: "Since decedent was not within one of the statutorily proscribed categories, the Department of Justice would not and was under no duty to notify [the firearm dealer] of any impediment to the delivery of the firearm, and [the firearm dealer] violated no statute when it delivered the gun to the decedent. [¶] . . . It is clear . . . that the thrust of the deadly weapon control scheme is to prevent harm to third persons and is not concerned with harm to the gun possessor himself." (*Id.* at p. 58.)

The latter statement in *Katona*—". . . the thrust of the deadly weapon control scheme is to prevent harm to third persons and is not concerned with harm to the gun possessor himself"—no longer accurately describes Welfare

and Institutions Code section 8103. In its 1990 amendments the Legislature also amended section 8103 to add a new category of persons banned from buying firearms. That category includes a person who is taken into custody under section 5150 because "that person is a danger *to himself, herself,* or to others," and a person who is admitted to a Lanterman-Petris-Short Act facility because that person "is a danger *to himself, herself,* or others." (Welf. & Inst. Code, § 8103, subd. (f)(1), added by Stats. 1990, ch. 9, § 16, italics added.)[9] It is hard to imagine words whose import could be more plain. By expanding the statutory categories to include a patient who is a danger to himself or herself, the Legislature has sought to prevent harm to those individuals from self-inflicted injury with a firearm. Stated another way, by virtue of the Legislature's categorical inclusion, it can no longer be said that self-inflicted firearm injuries are "not within one of the statutorily proscribed categories . . . ." (Cf. *Katona* v. *County of Los Angeles, supra,* 172 Cal.App.3d at p. 58.)

■ Application of these statutes to the case at hand is not difficult: plaintiff alleges that her husband received treatment pursuant to the Lanterman-Petris-Short Act "because he was a danger to himself." For purposes of the state's demurrer, this allegation must be accepted as true. (*DeVito* v. *State of California* (1988) 202 Cal.App.3d 264, 268 [248 Cal.Rptr. 330].) Plaintiff's husband thus was within one of the categories spelled out in Welfare and Institutions Code section 8103, subdivision (f)(1), which in turn means that he was prohibited from possessing firearms under Penal Code section 12076, subdivision (c). The injury suffered here—death by suicide—is a type of harm the Legislature intended to prevent by the enactment of section 12076. The second ground of the state's demurrer fails.

*Whether Proximate Cause Has Been Established*

The third and final ground of the state's demurrer was that the absence of proximate cause appeared from plaintiff's complaint as a matter of law. ■ This assertion by the state denies plaintiff's ability to show a "causation in fact" nexus between what it did or failed to do, and the suicide. (E.g., *Evan F.* v. *Hughson United Methodist Church* (1992) 8 Cal.App.4th 828, 834-835 [10 Cal.Rptr.2d 748]; *Osborn* v. *Irwin Memorial Blood Bank* (1992)

[9]Subdivision (f)(1) of Welfare and Institutions Code section 8103 presently provides: "No person who has been (A) taken into custody as provided in Section 5150 because that person is a danger to himself, herself, or to others, (B) assessed within the meaning of Section 5151, and (C) admitted to a designated facility within the meaning of Sections 5151 and 5152 because that person is a danger to himself, herself or others, shall own, possess, control, receive, or purchase, or attempt to own, possess, control, receive, or purchase any firearm for a period of five years after the person is released from the facility. . . ."

5 Cal.App.4th 234, 252 [7 Cal.Rptr.2d 101].) This aspect of causation analysis is an issue of fact unless reasonable minds could draw only one conclusion from plaintiff's allegations. (*Constance B.* v. *State of California* (1986) 178 Cal.App.3d 200, 207-208 [223 Cal.Rptr. 645].)

The Dangerous Weapons' Control Law rests on the premise that if the wrong people get guns they will use them. By tying the state's duty under Penal Code section 12076 to the California Tort Claims Act, the Legislature clearly contemplated that nonperformance of the former would give rise to liability under the latter. By extending the categories of prohibited firearm purchasers to include persons known to pose a danger to themselves, the Legislature recognized that wrongful firearm use could include suicides or self-inflicted gunshot injuries.

The question of causation in fact can be framed in a variety of ways. Would plaintiff's husband have committed suicide with a gun even if the Department of Justice had blocked his attempt to buy the Rossi .38-caliber at the Oakland gun shop? Alternatively, could reasonable minds conclude that the department's failure to comply with Penal Code section 12076 and to stop the sale was a substantial factor increasing the likelihood of plaintiff's husband using that gun to end his life? Or, could the state foresee that not keeping a handgun out of the hands of a person known to pose a danger to himself and/or others might result in that person using that handgun to those ends? Affirmative answers to each appear to have been accepted by the Legislature when it enacted the 1990 amendments to section 12076 and related statutes. Reasonably minded triers of fact could do likewise. Accordingly, the final ground of the state's demurrer is not sound.

## CONCLUSION

Read together, Penal Code section 12076 and Welfare and Institutions Code section 8103, subdivision (f) stand for a clear and simple proposition—the Department of Justice is to halt the sale of firearms to former Lanterman-Petris-Short patients who have a documented history of posing a danger to themselves or to others.

That reading compels the conclusion we reach today: plaintiff's wrongful death complaint does state a cause of action. Plaintiff alleges that the Department of Justice had mandatory duties imposed by Penal Code section 12076 to check its own records and those of the Department of Mental Health to determine if plaintiff's husband was among those persons declared statutorily ineligible to possess firearms. Plaintiff further alleges that had the state done this checking, it would have discovered that her husband was so

disqualified.[10] Had the state made this discovery it would have had the additional nondiscretionary duty to stop her husband from acquiring the handgun he later used to kill himself. Plaintiff, who was "totally economically dependent" upon her husband, suffered "special and general damages for [his] wrongful death" by reason of the state's breach of said duties. These allegations survive the state's general demurrer.[11]

The judgment is reversed.

Perley, J., and Reardon, J., concurred.

---

[10]Relying on the fact that the reporting requirement of Welfare and Institutions Code section 8103, subdivision (f) did not become effective until January 1, 1991, the state argues that "At the time of Mr. Braman's alleged commitment, there was no requirement that mental hospital[s] report a commitment to either the Department of Mental Health or the Department of Justice. Consequently, at the time of Mr. Braman's alleged commitment in 1990, the mental hospitals where Braman was allegedly committed had no duty to report the commitment to the state." The operative allegation of plaintiff's complaint, however, is that Mr. Braman was "treated, held, admitted, committed and diagnosed" by health care providers "[b]etween October 24, 1990 and *February 7, 1991*." (Italics added.) Our duty to construe this allegation liberally (see *Brenneman* v. *State of California*, *supra*, 208 Cal.App.3d at p. 815) compels us to treat Mr. Braman's commitment(s) as occurring after January 1, 1991.

The state makes no mention of its duty after January 1991 to request information from the Department of Mental Health and health care providers (see Welf. & Inst. Code, §§ 8104, 8105, quoted at fns. 4 & 5 *ante*, pp. 350-351), duties which plaintiff expressly alleged were not performed.

[11]Whether damages for "emotional distress and mental suffering" allegedly suffered by plaintiff as a consequence of her husband's suicide are recoverable under the California Tort Claims Act as part of her wrongful death action has not been challenged by the state, and we express no opinion on the possible merits of this issue. (Cf. Code Civ. Proc., § 377.34.)