[No. H030647. Sixth Dist. Oct. 28, 2009.]

JAVIER R. GUZMAN et al., Plaintiffs and Appellants, v.
COUNTY OF MONTEREY et al., Defendants and Respondents.

Counsel

Sullivan Hill Lewin Rez & Engel, Brian L. Burchett; Law Offices of Richard H. Rosenthal, Richard H. Rosenthal; Selden Law Firm and Lynde Selden II for Plaintiffs and Appellants.

Charles J. McKee, County Counsel, and Patrick I. McGreal, Deputy County Counsel, for Defendants and Respondents.

Opinion

**PREMO, J.**—This matter is before us on remand from the Supreme Court. Plaintiffs were residents of Jensen Camp Mobile Home Park (Jensen Camp) located in the County of Monterey (County). Plaintiffs alleged that Jensen Camp water had been contaminated with dangerously high levels of naturally occurring fluoride since at least 1995 but that they were not informed of the contamination until 2003. Plaintiffs sued Rick Pinch, Jensen Camp's owner and water system operator. Plaintiffs also sued County.[1] Plaintiff's third cause of action alleged that County was liable under Government Code section 815.6 for breaching mandatory duties imposed by the California Safe Drinking Water Act (Health & Saf. Code, § 116270 et seq.) and its implementing regulations. Plaintiffs pointed out that the regulations required County to have reviewed the reports Pinch submitted between 1995 and 2002, all of which showed that the water was contaminated, and to have reported the violations to the State Department of Health Services (DHS). According to plaintiffs, these duties implied the further duty to direct Pinch to notify them of the contamination.

The trial court sustained County's demurrer to the third cause of action on the ground that Government Code section 815.6 did not impose any actionable mandatory duty. This court reversed the judgment, agreeing with plaintiffs that the regulations imposed an implied mandatory duty to direct Pinch to alert his customers to the elevated fluoride level. The Supreme Court reversed but limited its holding to rejecting the existence of an *implied* duty "to instruct a water system to notify consumers of water contamination." (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 911 [95 Cal.Rptr.3d 183, 209 P.3d 89] (*Guzman*).) The Supreme Court remanded the case to this court, directing us to consider whether plaintiffs have alleged any express mandatory duties that would, in and of themselves, give rise to an action under Government Code section 815.6. (*Guzman, supra,* at p. 911.)

---

[1] Plaintiffs sued County and Monterey County Health Department, which is a County agency. The latter was not treated as a separate entity below. Accordingly, we refer to both defendants simply as the County.

We now conclude that California Code of Regulations, title 22, section 64256, subdivision (e),[2] imposes upon County the express mandatory duty to undertake a monthly review of all water quality monitoring data submitted to it in order to detect deviations from specific water quality standards. We further conclude that this duty was designed to protect water consumers like plaintiffs from the type of harm they claim to have suffered. Plaintiffs have adequately alleged a cause of action based upon County's breach of this duty and there is no applicable immunity. Accordingly, we shall reverse the judgment and instruct the trial court to enter a new order, overruling County's demurrer to the third cause of action.

## I. *Factual and Procedural Background*

Under Health and Safety Code section 116325, the DHS is "responsible for ensuring that all public water systems are operated in compliance with [the California Safe Drinking Water Act]." As permitted by Health and Safety Code section 116330, the DHS delegated its primary responsibility for administration and enforcement of the act to County as the "local primacy agency." Thus, at all times relevant, County was responsible for ensuring that the Jensen Camp system was operated in compliance with the law. Among the applicable laws were the regulations issued by the DHS that set maximum contaminant level (MCL) for many substances found in drinking water. (See, e.g., § 64256.) Water system operators were required to monitor their water and report the results to County. (§ 64432.) Whenever a test revealed contaminants in excess of the specified MCL, monitoring and reporting requirements were intensified. (§ 64432, subd. (g).) At all pertinent times, the MCL for fluoride was never more than 2.4 mg/L. (Former § 64431, table 64431-B; § 64431, table 64431-A.) According to plaintiffs, water containing fluoride in excess of the established MCL poses a risk of injury to persons drinking it.

Plaintiffs' third amended complaint alleges that Pinch was not a knowledgeable water system operator. He depended upon County for direction and advice concerning operation of the Jensen Camp water system. Pinch submitted a report to County in November 1995 showing the level of fluoride in the Jensen Camp water to be 7.6 mg/L. Pinch submitted another report in 1999 showing the fluoride level to be 8.5 mg/L. In or about 2001, Pinch submitted one or more consumer confidence reports to County, which reflected the fluoride levels detected in 1995 and 1999.[3] Finally, in 2002, Pinch reported a fluoride level of 5.8 mg/L.

---

[2] Further unspecified section references are to title 22 of the California Code of Regulations.

[3] The requirement for consumer confidence reports appears to have been first imposed in 2001. (§§ 64480–64483.)

Although the reports Pinch submitted between 1995 and 2002 showed that the Jensen Camp water contained levels of fluoride that exceeded the MCL's specified by the regulations, prior to 2002 County employees did not review those reports and did not direct Pinch to do any followup monitoring other than at routine three-year intervals. Further, County did not ensure that Pinch delivered the consumer confidence reports to his customers, did not otherwise direct Pinch to notify his customers that their drinking water was unsafe, and did not report his violations to the DHS. It was not until April 2003 that County imposed a compliance order under which Pinch acknowledged the contamination and agreed to make repairs to the water system. Plaintiffs did not learn of the contamination until after plaintiffs Javier R. Guzman and Tosha F. Djirbandee-Ramos purchased Jensen Camp from Pinch in or about August 2003.

In plaintiffs' third amended complaint, the third and fourth causes of action were directed against County. (The action against Pinch is not at issue here.) The third cause of action was for negligence under Government Code section 815.6. The fourth cause of action alleged negligence under a special-relationship theory. Plaintiffs alleged that, due to County's negligence, they unknowingly consumed contaminated drinking water from at least November 1995, "resulting in pain and suffering and in injuries to their bodies and nervous systems, skeletal structures and other injuries not yet identified." The trial court sustained County's demurrer to both causes of action, without leave to amend. Plaintiffs have challenged only the ruling on the Government Code claim.

II. *Legal Framework*

"On appeal from a dismissal entered after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the petition states a cause of action as a matter of law." (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 869 [13 Cal.Rptr.3d 420].) "We deem to be true all material facts that were properly pled. [Citation.] We must also accept as true those facts that may be implied or inferred from those expressly alleged. [Citation.] We may also consider matters that may be judicially noticed, but do not accept contentions, deductions or conclusions of fact or law." (*Id.* at pp. 869–870.) "We independently construe statutory law, as its interpretation is a question of law on which we are not bound by the trial court's analysis." (*Id.* at p. 870.)

■ It is settled that public entities such as County are not liable in tort except as provided by statute. (Gov. Code, § 810 et seq.; *Guzman, supra,* 46

Cal.4th at p. 897.) One such statute is Government Code section 815.6, which provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." *Guzman, supra,* 46 Cal.4th at pages 898–900, describes the requirements of this section in detail.

■ Briefly, there are three elements to a cause of action under Government Code section 815.6. First, the enactment at issue must be obligatory, not merely discretionary or permissive in its directions to the public entity. (*Guzman, supra,* at p. 898.) Typically, an enactment imposing a mandatory duty also includes specific rules and guidelines for implementation. Second, the duty imposed must be designed to protect against the particular kind of injury the plaintiff suffered. "We examine the 'language, function and apparent purpose' of each cited enactment 'to determine if any or each creates a mandatory duty designed to protect against' the injury allegedly suffered by [the] plaintiff." (*Ibid.*) The requirement is not satisfied if the enactment merely confers some incidental benefit upon the class to which the plaintiff belongs. The third and final requirement is that the breach of the duty must have been a proximate cause of the plaintiff's injury. (*Ibid.*)

■ " 'Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts.' " (*Guzman, supra,* 46 Cal.4th at p. 898.) As in any negligence action, causation is usually a question of fact for the jury. (*Alejo v. City of Alhambra* (1999) 75 Cal.App.4th 1180, 1189 [89 Cal.Rptr.2d 768].)

III. *Discussion*

A. *Mandatory Duty*

1. *Particular Obligation*

The California Safe Drinking Water Act and its implementing regulations are comprehensive and detailed. (*Guzman, supra,* 46 Cal.4th at p. 901.) Particularly pertinent here are sections 64431 and 64432, which are part of title 22, division 4, chapter 15 (hereafter, Chapter 15). These sections contain, respectively, the MCL's for inorganic chemicals, including fluoride, and the water system's monitoring and reporting requirements.

■ The gist of plaintiffs' claim is found in sections 64256 through 64258, which pertain to the responsibilities of the local primacy agency. In short, section 64256 requires the local primacy agency to inform the water system operator of its monitoring and reporting requirements (§ 64256, subd. (a)), to establish a system for review of all water quality data submitted by the water system operators (§ 64256, subd. (e)), and to review such data monthly (*ibid.*). Section 64257 requires the agency to report to the DHS monthly any water systems in violation of the monitoring or reporting requirements (§ 64257, subd. (a)(1)), and to submit monthly compliance reports listing any water system that is in violation of, among other things, the standards set by Chapter 15 (§ 64257, subd. (a)(2)). Section 64258, subdivision (a) requires the agency to "take enforcement actions as necessary to assure that all small water systems under [its] jurisdiction . . . are in compliance with [Chapter 15 and other specified regulations]."

In their third amended complaint, plaintiffs cited sections 64256 and 64257 as bases for their negligence claim against County. In their supplemental brief on remand, plaintiffs argue that these sections impose upon County an express mandatory duty to report Pinch's various violations to the DHS. Plaintiffs argue generally that under section 64256, subdivision (e) and section 64257 subdivision (a), County had a mandatory duty "to report Jensen Camp's ongoing water quality, monitoring and testing, notification and reporting violations to [DHS]," the breach of which was a proximate cause of plaintiffs injuries because "both the County and state had mandatory enforcement duties which, even if not actionable themselves . . . required the County and state to respond to violations such as those at issue in this case." The argument incorporates what we view as the central duty, which is the duty to conduct a regular monthly review of all water quality monitoring data submitted.

■ Section 64256, subdivision (e) states in full, "A system shall be established by the local primacy agency to assure that the water quality monitoring data submitted by the small water systems [are] routinely reviewed for compliance with the requirements of Title 22, Division 4, Chapters 15, 17, and 17.5 of the California Code of Regulations. The monitoring reports shall be reviewed each month for each small water system and the data entered into the data management system at least monthly." Although the first half of this subdivision gives County discretion to devise an effective system for reviewing water quality monitoring data, the second half imposes a particular duty—the review of water quality monitoring data. It also contains an implementing guideline—review must be conducted at least monthly.

The verb "review" means that the County must read the water quality data submitted to determine if they reflect any deviation from the applicable standards. That much is clear from the plain language of the subdivision—the data are to be "reviewed for compliance" with Chapter 15 and the other specified regulations. (§ 64256, subd. (e).) Chapter 15 includes section 64431, which sets the MCL for fluoride, and section 64432, which contains the water system's monitoring and reporting requirements. The only way the County could know whether the Jensen Camp water met the quality standards or whether Pinch was in compliance with his monitoring and reporting requirements, was to examine the water quality data it received from him.

It is true that, if County had recognized the excessive fluoride reflected in the data that Pinch submitted, it could have responded in any number of other ways. (*Guzman, supra*, 46 Cal.4th at p. 906.) Since its choice of enforcement actions is discretionary, County's enforcement duty cannot form the basis for liability under Government Code section 815.6. (*Guzman, supra*, at p. 906.) Nor is the requirement that County report violations sufficiently particular to be deemed a mandatory duty as there may be questions as to when a system is actually "in violation." For example, was County required to report the Jensen Camp system upon the first notice of excess fluoride in 1995? Or was Jensen Camp in violation only if followup testing confirmed the results of the 1995 test? (See *In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 684–685 [64 Cal.Rptr.3d 827] [isolated exceedances of MCL's are not "violations" of drinking water standards for purpose of water supplier liability].) The parties do not address this question nor do we find it necessary to do so. The point is that in order to determine whether any enforcement action or report was required, County had to review the water quality data it received. There was no discretion involved in deciding how often to conduct a review; it was required to review the data "each month." Nor was there any discretion involved in deciding whether the water quality met the regulatory standards. County had only to compare the data to the standards listed in the regulations. Given the very clear regulatory standards for contaminants and the particular duty prescribed by section 64256, subdivision (e), it is not unfair or against public policy to impose a mandatory duty on a public entity to review the water quality data it receives at least monthly to determine whether the water meets the regulatory standards.

County argues that "[i]t is undisputed" that it never received any of the notices Pinch was required to issue. But this is an appeal following a demurrer sustained. We assume the allegations of the complaint to be true. (*City of Morgan Hill v. Bay Area Air Quality Management Dist., supra*, 118 Cal.App.4th at p. 870.) The operative complaint alleges that County received

at least four water quality reports from Pinch between 1995 and 2002, each of which showed that the level of fluoride in the Jensen Camp water exceeded the MCL set by section 64431 but that the County never reviewed them. That review was a particular, nondiscretionary obligation imposed by section 64256, subdivision (e).

## 2. *Persons Protected by the Obligation to Review*

■ There is still the question of whether County's failure to review the data could in and of itself form the basis for liability under Government Code section 815.6. That is, was this duty designed to protect against the kind of injury plaintiffs are alleged to have suffered and was its breach a proximate cause of their injuries? To answer the first question, we look to the core duties imposed by the enactments at issue (*Guzman, supra,* 46 Cal.4th at p. 910) and the nature of the injuries alleged (*Braman v. State of California* (1994) 28 Cal.App.4th 344, 354–355 [33 Cal.Rptr.2d 608]).

■ The core duty imposed by section 64256, subdivision (e) was administrative in nature. It required County to review water quality data every month in order to determine whether the water system complied with the regulatory requirements. County insists that the regulatory scheme imposes specific duties on the operators of small water systems only. As to its own administrative duties, County states simply that "[t]here may be many reasons for the legislature to address [the County's] reporting and record keeping tasks." In our view, the primary reason for imposing the duty to review water quality reports monthly was to insure that contamination is promptly recognized and to avoid having reports of contamination fall through the cracks unexamined. Indeed, this purpose is expressly set forth in section 64256, subdivision (e), which requires the local primacy agency to establish a system "to assure that the water quality monitoring data submitted by the small water systems is routinely reviewed for compliance." Plaintiffs are directly benefitted by the routine review of such data. As one court has explained, "MCL's are developed for the purpose of protecting the public from possible health risks associated with *long-term* exposure to contaminants." (*In re Groundwater Cases, supra,* 154 Cal.App.4th at p. 686.) "DHS sets these numerical limits to guard against the possible health risks of prolonged exposure to contaminants." (*Id.* at p. 687.) Regular review of water quality reports directly benefits water consumers like plaintiffs by ensuring that the agency charged with enforcement of water quality standards receives notice when the water is out of compliance so that it can take action to protect them from prolonged exposure.

We stress that County's response to any particular notice of noncompliance is not subject to liability under Government Code section 815.6. But the allegation in this case is not that County chose not to take action in response to the reports of contamination; the allegation is that County did not make any choice about enforcement because, in failing to review the reports, County lacked notice of the contamination altogether—the reports fell through the cracks unexamined, and plaintiffs continued to drink the contaminated water. In short, section 64256, subdivision (e), requiring monthly review of water quality data for compliance with regulatory requirements, was designed to prevent exactly the type of harm plaintiffs allege occurred here.

### 3. *Causation*

█ The final question is whether plaintiffs' injuries were proximately caused by County's failure to review the water quality data. (Gov. Code, § 815.6.) Whether County's breach was a proximate cause of the harm, or whether the harm was caused solely by the operation of some other factor (such as Pinch's negligence), is purely a factual issue unless reasonable minds could draw only one conclusion from plaintiffs' allegations. (*Braman v. State of California, supra*, 28 Cal.App.4th at p. 356.) Here, causation is a factual issue that cannot be decided at this stage.

█ Plaintiffs allege that County did not "review monitoring reports each month" and because County failed to review the data, County "failed to recognize" the fluoride contamination. Further, "As a direct result of the County's negligent failure to perform its obligations, as described herein, under [sections 64256 and 64257, among others,] Plaintiffs unknowingly consumed contaminated drinking water from at least November 1995, resulting in pain and suffering and in injuries to their bodies and nervous systems, [and] skeletal structures."

At this stage we can only speculate about what County might have done and what the results of that choice would have been had County actually reviewed the water data. Plaintiffs could produce evidence that would make the determination less speculative. Given only the allegations of the pleading, however, reasonable minds could draw any number of conclusions, one of which could be that County's breach was a substantial factor in causing the injuries plaintiffs are alleged to have suffered.

In sum, plaintiffs have alleged a cause of action for breach of the mandatory duty contained in section 64256, subdivision (e) that is adequate

for pleading purposes. Accordingly, the trial court erred in sustaining the demurrer on the ground County had no such mandatory duty.

B. *Immunity*

 In a tort action against a public entity, the question of duty is a threshold issue. The next question is whether any statutory immunity applies to bar plaintiffs' negligence cause of action. (*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 202 [185 Cal.Rptr. 252, 649 P.2d 894].) We had previously concluded that none of the immunities the County raised in its defense were applicable here. (Gov. Code, §§ 818.2, 820.4, 821, 818.4, 821.2, 820.8.) We find no reason to revise that ruling.

 Government Code section 818.2 provides that a public entity "is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." The companion section, Government Code section 821, extends the same immunity to the public employee. Citing the California Law Revision Commission comments to Government Code section 818.2, County argues that the section was "designed to protect a public regulatory agency from the implications of Government Code section 815.6." County misconstrues the comment, which is: "This section recognizes that the wisdom of legislative or quasi-legislative action, and the discretion of law enforcement officers in carrying out their duties, should not be subject to review in tort suits for damages if political responsibility for these decisions is to be retained." (Cal. Law Revision Com. com., Deering's Ann. Gov. Code (1982 ed.) foll. § 818.2, p. 165.) As the Supreme Court has explained, Government Code section 818.2 was intended to provide immunity for legislative and quasi-legislative action and to protect the exercise of discretion by law enforcement officers in carrying out their duties. (*Morris v. County of Marin* (1977) 18 Cal.3d 901, 916 [136 Cal.Rptr. 251, 559 P.2d 606].) Because Government Code sections 818.2 and 821 apply to legislative and *discretionary* law enforcement actions, they do not apply here, where we are concerned with a nondiscretionary act. The duty to review water quality data is not a law "enforcement" duty. It is a recordkeeping requirement designed to make sure that the entities having enforcement authority get notice when enforcement is needed. To apply these sections to immunize County from liability for breach of a mandatory duty "would completely eviscerate Government Code section 815.6 which specifically provides for liability of the public entity for injuries resulting from a failure to carry out a mandatory duty imposed by a public enactment." (*Elton v. County of Orange* (1970) 3 Cal.App.3d 1053, 1059 [84 Cal.Rptr. 27]; see also *Alejo v. City of Alhambra, supra*, 75 Cal.App.4th at p. 1194.)

■ Government Code section 820.4 extends immunity to a public employee "for his [or her] act or omission, exercising due care, in the execution or enforcement of any law. . . ." This statute does not warrant dismissal of plaintiffs' negligence claims because there is a question of fact as to whether County employees exercised "due care" in reviewing Pinch's water quality reports. (See *Ogborn v. City of Lancaster* (2002) 101 Cal.App.4th 448, 462 [124 Cal.Rptr.2d 238].)

■ The immunity provided by Government Code section 818.4 pertains to injuries caused by the public entity's "issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." Government Code section 821.2 extends the same immunity to the public employee. These sections do not apply here because there was no discretionary licensing decision. The wrongful act was the failure to comply with the mandatory duty to review water quality reports.

■ Government Code section 820.8, which provides that a public employee "is not liable for an injury caused by the act or omission of another person" is inapplicable because the injury is alleged to have been caused by the public employee's negligence. Indeed, Government Code section 820.8 concludes, "Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission."

■ In its supplemental brief County raises the additional defense of Government Code section 818.6. Government Code section 818.6 provides immunity to the public entity for a failure to make an inspection or for making a negligent inspection of property for the purpose of determining whether the property violates the law or is hazardous to health or safety. (*Elton v. County of Orange, supra*, 3 Cal.App.3d at p. 1059.) County is correct that, unlike Government Code sections 818.2 and 818.4, Government Code section 818.6 applies to both discretionary and ministerial acts. (*Morris v. County of Marin, supra*, 18 Cal.3d at p. 916; *Clayton v. City of Sunnyvale* (1976) 62 Cal.App.3d 666, 670 [133 Cal.Rptr. 306].) However, the section deals with inspections of *physical* property. (*Elton v. County of Orange, supra*, at p. 1059.) The instant problem does not involve County's inspection of physical property. It merely requires *reading* the written reports Pinch submitted. Thus, this section does not apply.

IV. *Disposition*

The judgment is reversed and remanded with directions to the trial court to vacate its order sustaining the demurrer of defendants County of Monterey and Monterey County Health Department to the third cause of action for negligence under Government Code section 815.6, and to enter a new order overruling the demurrer as to that cause of action.

Rushing, P. J., and Elia, J., concurred.

Respondents' petition for review by the Supreme Court was denied February 24, 2010, S178397. Baxter, J., did not participate therein. Kennard, J., and Corrigan, J., were of the opinion that the petition should be granted.