[No. B241171. Second Dist., Div. Eight. Sept. 5, 2012.]

COUNTY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
KAMERON FATEN, a Minor, etc., et al., Real Parties in Interest.

COUNSEL

John F. Krattli, County Counsel, Richard K. Mason and Diane C. Reagan, Deputy County Counsel; Ford, Walker, Haggerty & Behar, Joseph A. Heath, Renee E. Jenson; Greines, Martin, Stein & Richland, Martin Stein and Carolyn Oill for Petitioner.

No appearance for Respondent.

R. Rex Parris Law Firm, Howard S. Blumenthal and Brendan P. Gilbert for Real Parties in Interest.

OPINION

**GRIMES, J.**—Under Government Code section 815.6, a public entity may be liable for injury caused by its failure to discharge a "mandatory duty" imposed by an enactment designed to protect against that type of injury.[1] Our Supreme Court has explained that, to be mandatory, "the enactment [must] be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity . . . ." (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498 [93 Cal.Rptr.2d 327, 993 P.2d 983] (*Haggis*).) In addition, "[i]t is not enough . . . that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion." (*Ibid.*) Therefore, an enactment's use of mandatory language such as "shall" is not dispositive. An enactment creates a mandatory duty "only where the . . . commanded act [does] not lend itself to a normative or qualitative debate over whether it was adequately fulfilled." (*de Villers v. County of San Diego* (2007) 156 Cal.App.4th 238, 260 [67 Cal.Rptr.3d 253] (*de Villers*).)

The main issue raised in this writ proceeding is whether the County of Los Angeles (County) had a mandatory duty to capture and take into custody two privately owned pit bulls before they attacked one of the plaintiffs in this case. The trial court concluded it did based on certain provisions in the Los Angeles County Code (LACC) which, when read together, require the director of the County Department of Animal Care and Control to capture and take into custody any animal that "constitute[s] or cause[s] a hazard, or [is] a menace to the health, peace or safety of the community."

We hold the trial court erred in its construction of the LACC provisions in question. We also reject plaintiffs' additional arguments that other provisions in the LACC imposed a mandatory duty on the County to take certain actions

---

[1] Undesignated statutory references are to the Government Code.

that might have prevented the pit bull attack in this case. Accordingly, we grant the County's petition for a writ of mandate and direct the trial court to vacate its order denying the County's motion for summary judgment and to thereafter enter a new order granting the motion.

## FACTUAL AND PROCEDURAL HISTORY

One afternoon in September 2009, Kameron Faten and his brothers, Devin and Jordan, were walking home from school when two pit bulls belonging to John Bowles jumped over a fence at Bowles's residence and attacked Kameron, causing serious injuries. In August 2010, the three brothers filed this action by and through their guardian ad litem, Melissa Faten. The complaint named three defendants: Bowles, the dogs' owner; Daniel Miller, Bowles's landlord; and the County.

The second amended and operative complaint (complaint) contains three causes of action against the County, all of which sound in negligence. Two are substantially similar and are denominated "negligence," while a third, asserted by the two brothers who witnessed the attack, is for negligent infliction of emotional distress. Among other things, the complaint alleges that the County "had received numerous complaints about the . . . pit bulls yet failed to capture and take the pit bulls into custody pursuant to [LACC], § 10.12.090, knowing that they posed an immediate threat to public safety."

The LACC section cited in the complaint, and the one upon which the trial court ultimately relied to deny summary judgment in this case, provides in pertinent part that "[t]he director [of the County Department of Animal Care and Control] *shall* capture and take into custody [¶] . . . [¶] . . . [a]ny animal being kept or maintained contrary to the provisions of this Division 1, the Animal Control Ordinance, or any other ordinance or state statute." (LACC, § 10.12.090C, italics added.)

LACC section 10.40.010 provides that all persons in the County who own animals must comply with a list of 21 conditions. The condition that is relevant to this writ proceeding provides: "No animal shall be allowed to constitute or cause a hazard, or be a menace to the health, peace or safety of the community." (LACC, § 10.40.010W.)

According to the complaint, after the attack, the County seized the dogs and they were euthanized within one month of their capture.

In October 2011, the County moved for summary judgment, claiming it had no mandatory duty to capture the dogs before the attack on Kameron. As part of its motion, the County presented evidence reflecting that, in the

approximately two and one-half years before the attack on Kameron, its department of animal care and control had received nine calls about pit bulls at Bowles's residence. All but the last two were from anonymous callers. The anonymous calls were made between April 18, 2007, and February 4, 2008. The callers reported that pit bulls jumped the fence and were running loose, and some callers reported they were chasing people. In each case, an officer was sent to the location. In most cases, the officer was unable to find a dog running loose or to make contact with the owner. In several cases, legal notices were left. In one case, the officer impounded a pit bull found running at large after an anonymous caller reported the pit bull was chasing a County inspector. The officer went to the Bowles property, found no one at home, and posted a notice on the door. No one claimed the impounded dog, and it was euthanized.

The first time a caller identified herself by name was when Dawn Harrison called twice, at the end of May and beginning of June 2009. She first reported two pit bulls jumped their fence, then jumped over Harrison's fence and killed two goats. She called again a few days later to report the dogs were loose again and chased her son. The department sent an officer to the Bowles's residence in response to both of Harrison's complaints. The first time, the officer was unable to make contact with the owner of the dogs, and the officer posted a 24-hour notice on the door. The second time, the officer contacted Bowles's daughter, Jordan Bowles, and issued an order to comply, requiring Bowles to keep not more than three dogs on his property, the legal limit permitted in unincorporated areas of the County.

Harrison testified in deposition there were many dogs coming and going on Bowles's property. Another neighbor testified that Bowles would acquire dogs and get rid of dogs so there was a free flow of animals in and out of Bowles's house. The anonymous complaints to the department described a pit bull that escaped from the Bowles property but not specifically which pit bull. The anonymous complaints variously described a "Black and White Pitbull," a "White Pitbull," and a "Brown/white Pitbull."

The trial court denied the County's summary judgment motion. According to the court, the "undisputed facts indicate that Defendant Bowles's dogs constituted a hazard and a menace to the health, peace and safety of the community." Therefore, the court concluded, when read together, LACC sections 10.12.090C and 10.40.010W gave rise to a mandatory duty on the part of the County to take custody of the dogs before the attack.

The County filed a timely writ petition challenging the trial court's ruling. We issued an alternative writ, received additional briefing from the parties and heard oral argument.

# DISCUSSION

1. *Applicable Law and the Standard of Review.*

■ Under the Government Claims Act (§ 810 et seq.), there is no common law tort liability for public entities. Tort liability may be imposed against a public entity only pursuant to statute. (§ 815, subd. (a); *Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897 [95 Cal.Rptr.3d 183, 209 P.3d 89].)

One statute that may give rise to public entity liability is section 815.6, which provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." For purposes of section 815.6, "enactment" means "a constitutional provision, statute, charter provision, ordinance or regulation." (§ 810.6.)

■ "[A]pplication of section 815.6 requires that the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken." (*Haggis, supra*, 22 Cal.4th at p. 498.) Even where an enactment imposes an obligation, it does not necessarily follow that the obligation gives rise to a mandatory duty. The key question is whether the obligation involves an exercise of discretion. As the Supreme Court explained, "[i]t is not enough . . . that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion." (*Ibid.*)

Therefore, specific terms used in the enactment are not dispositive. For example, in some contexts, use of the word "shall" will impose a mandatory duty (see, e.g., *Morris v. County of Marin* (1977) 18 Cal.3d 901, 904–911 [136 Cal.Rptr. 251, 559 P.2d 606] [statute providing that local government entity " 'shall require' " applicant for building permit to provide proof of workers' compensation coverage creates mandatory duty]), while in others it will not (see, e.g., *de Villers, supra*, 156 Cal.App.4th at pp. 256–263 [federal regulation stating that entities licensed by federal Drug Enforcement Agency to store controlled substances " 'shall provide' " effective controls against theft did not create mandatory duty]). As the Court of Appeal explained in *de Villers, supra*, 156 Cal.App.4th at page 260: "In determining whether a mandatory duty actionable under section 815.6 had been imposed, the Legislature's use of mandatory language (while necessary) is not the dispositive criteria. Instead, the courts have focused on the particular action required

by the statute, and have found the enactment created a mandatory duty under section 815.6 *only where the statutorily commanded act did not lend itself to a normative or qualitative debate over whether it was adequately fulfilled.*" (Italics added, fn. omitted; see *County of Los Angeles v. Superior Court (Terrell R.)* (2002) 102 Cal.App.4th 627, 639 [125 Cal.Rptr.2d 637] ["An enactment creates a mandatory duty if it requires a public agency to take a *particular* action. [Citation.] An enactment does not create a mandatory duty if it merely recites legislative goals and policies that must be implemented through a public agency's exercise of discretion. [Citation.] The use of the word 'shall' in an enactment does not necessarily create a mandatory duty." (italics added)].)

Whether an enactment creates a mandatory duty is a question of law which we review de novo. (*Haggis, supra,* 22 Cal.4th at p. 499.)

2. *The Trial Court Erred in Concluding the LACC Imposed a Mandatory Duty on the County to Capture the Pit Bulls Before the Attack.*

██ In this case, LACC sections 10.12.090C and 10.40.010W may be read together as requiring the County to capture any animal that "constitute[s] or cause[s] a *hazard,* or [is] a *menace to the health, peace or safety of the community.*" (Italics added.) However, what constitutes a "hazard" or a "menace to the health, peace or safety of the community" is an inherently subjective question which requires the exercise of considerable discretion based on consideration of a host of competing factors. (See *Haggis, supra,* 22 Cal.4th at pp. 505–506 [discussing discretion inherent in determination whether hazard is " 'likely to be of such extent as to be an immediate hazard to occupancy of [a] proposed building' "]; *Department of Corporations v. Superior Court* (2007) 153 Cal.App.4th 916, 933–934 [63 Cal.Rptr.3d 624] [discussing "sound judgment, expertise and discretion" inherent in determination whether action is " 'necessary or appropriate in the public interest or for the protection of investors . . .' "].) It involves "debatable issues over whether the steps taken by the entity *adequately* fulfilled its obligation." (*de Villers, supra,* 156 Cal.App.4th at p. 260.) The LACC sections therefore did not impose a mandatory duty on the County to capture the pit bulls in question before they attacked Kameron.

The cases upon which plaintiffs rely are inapposite. Thus, in *Scott v. County of Los Angeles* (1994) 27 Cal.App.4th 125 [32 Cal.Rptr.2d 643], the court considered whether the County could be held liable for injuries a child sustained at the hands of her foster care provider. To answer this question, the court had to determine whether a State Department of Social Services regulation requiring social workers to have monthly face-to-face contact with each child in foster care, as well as monthly contact with each foster care

provider (*id.* at p. 134), imposed a mandatory duty. The court determined the regulation in question imposed such a mandatory duty. The court explained that the regulation, "including the requirement of monthly face-to-face contact, *plainly constituted mandatory requirements* which left [the social worker] no choice on the issue of the frequency of visits to [the child]." (*Id.* at p. 142.) Because the regulation authorized less frequent visits under certain circumstances only if approved in writing by a second-level supervisor, and because such approval had not been obtained, the social worker's "failure to visit [the child] on a monthly basis was not an omission resulting from an exercise of discretion vested in [the social worker] under the regulation . . . ." (*Ibid.*)

 Stated simply, the regulation in question contained a specific obligation which left no room for the exercise of discretion. There was no room for debate whether the obligation had been adequately performed. Here, in contrast, the LACC provisions upon which plaintiffs rely imposed no such clear and unequivocal mandatory duty. A duty to capture any animal that constitutes or causes "a hazard, or [is] a menace to the health, peace or safety of the community," involves considerable exercise of discretion.

In *Braman v. State of California* (1994) 28 Cal.App.4th 344, 356–357 [33 Cal.Rptr.2d 608], the Court of Appeal considered whether certain amendments to Penal Code former section 12076 requiring the Department of Justice to check mental health records of persons attempting to purchase a handgun created a mandatory duty. The statutory amendments were a response to an earlier appellate decision (*Gray v. State of California* (1989) 207 Cal.App.3d 151 [254 Cal.Rptr. 581]) holding that a prior version of the statute did not impose a mandatory duty. (See *Braman, supra,* 28 Cal.App.4th at pp. 347, 349–351.) Before the amendments, the statute required the Department of Justice to advise gun dealers if it " 'determines that the purchaser is a person described in' " certain sections of the Penal Code or Welfare and Institutions Code. (*Id.* at p. 349.) Construing this earlier statutory language, the Court of Appeal in *Gray* held that it " 'does not describe the type of investigation required,' an omission which 'suggests that this is a matter left to the discretion of the Department of Justice.' " (*Ibid.*, quoting *Gray, supra,* 207 Cal.App.3d at pp. 155–157.) In response to this decision, the Legislature amended the statute by, among other things, specifying the *precise* records the Department of Justice was required to examine. (See *Braman, supra,* 28 Cal.App.4th at pp. 350–352.) Based on this very specific language, as well as unequivocal evidence that the amendments were designed to "overthrow *Gray,*" the Court of Appeal in *Braman* had little difficulty holding that the amendments gave rise to a mandatory duty. (*Id.* at pp. 349–353; see especially *id.* at p. 352 ["The Legislature inserted language of unavoidable obligation and specified the nature of that obligation with

some precision. It then linked nonperformance of that obligation to liability under the California Tort Claims Act."].)

In this case, we are not dealing with such precise language that it is not subject to interpretation and discretion in its application. In addition, plaintiffs have offered no legislative history of LACC sections 10.12.090 and 10.40.010 which reflects an intent to impose liability on the County in case of nonperformance.

Finally, in *Alejo v. City of Alhambra* (1999) 75 Cal.App.4th 1180 [89 Cal.Rptr.2d 768] (*Alejo*), the Court of Appeal considered the potential liability of a city for abuse suffered by a three-year-old boy after a police officer allegedly failed to conduct any investigation in response to a detailed report of abuse. In considering the issue, the court was required to determine whether a mandatory duty was imposed by Penal Code former section 11166, subdivision (a). At the time, the statute provided that an employee of a child protective agency—defined to include a police officer—"who has knowledge of or observes a child . . . whom he or she knows or reasonably suspects has been the victim of child abuse *shall* report the known or suspected instance of child abuse to a child protective agency immediately or as soon as practically possible by telephone and shall prepare and send a written report thereof within 36 hours of receiving the information concerning the incident." (Pen. Code, former § 11166, subd. (a), italics added; see *Alejo, supra,* 75 Cal.App.4th at pp. 1185–1186.) The Court of Appeal concluded the statute imposed two mandatory duties on a police officer who received a report of child abuse—the duty to investigate and the duty to file a report of child abuse when an objectively reasonable person in the same situation would suspect abuse. (75 Cal.App.4th at p. 1186.)

While it is true that the second of the duties identified by the Court of Appeal in *Alejo*—the duty to file a report "when an objectively reasonable person in the same situation would suspect abuse"—requires the exercise of some judgment, it is not one that involves the exercise of discretion. (*Alejo, supra,* 75 Cal.App.4th at p. 1186.) It is an inherently objective determination that does not require consideration of a host of potentially competing factors. In contrast, determining whether an animal constitutes or causes a "hazard, or [is] a menace to the health, peace or safety of the community," is an inherently subjective process which requires the exercise of professional expertise and consideration of a host of potentially competing factors.

■ In sum, even when read together, LACC sections 10.12.090C and 10.40.010W cannot be construed in the manner urged by plaintiffs. These sections did not impose a mandatory duty on the County to take custody of the pit bulls before Kameron was attacked.

### 3. *Plaintiffs' Additional Arguments for Imposing Liability on the County Lack Merit.*

Plaintiffs cite two additional LACC provisions which they claim impose mandatory duties that can serve as a basis for imposition of liability against the County in this case. Plaintiffs cited these provisions in their opposition to the County's summary judgment motion, but the trial court did not address their applicability, presumably because it was not necessary to do so. Because these claims raise issues of law, and to avoid additional unnecessary proceedings, we address them here.

First, plaintiffs claim the County had a mandatory duty to petition the trial court "for a determination as to whether the pit bulls were potentially dangerous dogs." Plaintiffs cite LACC section 10.37.110A, which provides: "If an animal control officer or a law enforcement officer has investigated *and determined* that there exists probable cause to believe that a dog is potentially dangerous or vicious, the director of the department of animal care and control shall petition the Superior Court, within the judicial district wherein the dog is owned or kept, for a hearing, or shall conduct an administrative hearing, for the purpose of determining whether or not the dog in question should be declared potentially dangerous or vicious." (Italics added.)

■ This provision obligates the County to file a petition in the superior court when an officer has determined a dog is "potentially dangerous." But there is no obligation to act until an animal control officer or a law enforcement officer has "determined" that there is probable cause to believe "the dog in question" is "potentially dangerous or vicious." In this case plaintiffs presented no evidence that such a determination had been made. The County presented evidence that it did not know which "dog in question" was involved in the attack on Harrison's goats before Kameron was attacked, nor did any of the anonymous calls identify any particular dog on the loose. Therefore, LACC section 10.37.110A did not impose a mandatory duty on the County to petition the trial court before the attack on Kameron.

Finally, plaintiffs claim the County had a mandatory duty to investigate Harrison's two complaints about Bowles's pit bulls made a few months before Kameron was attacked. They cite LACC section 10.12.170, which provides: "The director shall receive, investigate and report to other county officers and county departments complaints concerning disturbing or offensive noises or conduct of animals or fowl kept or maintained in the unincorporated territory of the county of Los Angeles." Plaintiffs claim the County did not complete its investigation because the investigating officer did not review any previous complaints about the pit bulls in the animal control database.

Plaintiffs' argument amounts to a claim that the County did not conduct an adequate investigation. This argument demonstrates the County's duty was not mandatory because the duty of a public entity is not mandatory if it is debatable whether the duty was adequately fulfilled. (See *de Villers, supra,* 156 Cal.App.4th at pp. 260–261 ["when the statutorily prescribed act involves debatable issues over whether the steps taken by the entity *adequately* fulfilled its obligation, . . . the act necessarily embodies discretionary determinations by the agency regarding how best to fulfill the mandate, and this discretion removes the duty from the type of activity that supports a claim under section 815.6"].)

Plaintiffs rely on *Davila v. County of Los Angeles* (1996) 50 Cal.App.4th 137, 140–142 [57 Cal.Rptr.2d 651], which held the coroner had a mandatory duty to make a reasonable and diligent attempt to locate the family of a dead person. They argue that, just as the coroner may be found to have failed to discharge the duty by not calling the person identified in the decedent's personal effects as the one to call in case of accident, the County cannot show it exercised reasonable diligence by not examining the animal control database in the course of investigating Harrison's complaints.

The mandatory duty of the coroner involved the obligatory, ministerial task of looking through the decedent's personal effects and making an attempt to contact a readily identifiable relative as a condition to disposing of a body. In contrast, the duty of the County in question here involves permissive and discretionary decisions and conduct. Even if the investigating officer had read all the previous complaints in the animal control database, the County would not then have had an obligation to petition the court to declare a dog "potentially dangerous," or to seize and impound a dog.

■ An enactment requiring a public entity to conduct an investigation under certain circumstances does not, without more, impose a mandatory duty to take certain specified action. (See *State of California v. Superior Court* (1984) 150 Cal.App.3d 848, 858 [197 Cal.Rptr. 914] ["The commissioner's mandatory statutory duty to 'investigate' the Robinson complaint may not reasonably be read as imposing a mandatory duty on the commissioner to *take action* in the event the commissioner's investigation discloses evidence of wrongdoing."]; see also *MacDonald v. California* (1991) 230 Cal.App.3d 319, 331 [281 Cal.Rptr. 317] ["[E]xecution of the [statutory] duties to visit day care homes and investigate complaints necessarily involves some exercise of discretion in deciding what action to take, and when, to evaluate and assess a particular situation. A party disagreeing with or harmed by the exercise or nonexercise of such discretion has not explicitly been provided any remedy in damages by the Legislature. [¶] Moreover, . . . a mandatory duty to investigate is not the same as a mandatory duty to take action after the investigation."].)

## DISPOSITION

The petition for writ of mandate is granted. The respondent court is directed to vacate its April 12, 2012 order denying petitioner's motion for summary judgment, and to thereafter enter a new and different order granting the motion.

Petitioner is entitled to recover its costs in this writ proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

Bigelow, P. J., and Flier, J., concurred.