Filed 6/26/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CANDIS DANIELSON,<br><br>          Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF HUMBOLDT,<br><br>          Defendant and Respondent. | A166787<br><br>(Humboldt County<br>Super. Ct. No. CV2200262) |

Appellant Candis Danielson was seriously injured by dogs owned by Donald Mehrtens.  She filed this action for damages against numerous parties, including Mehrtens and the County of Humboldt (Humboldt County or County).  The County demurred.

Government Code section 815.6 provides that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."  The trial court sustained the County's demurrer without leave to amend.

Danielson argues the trial court erred.  The crux of her arguments is that she sufficiently pleaded that Humboldt County failed to discharge certain mandatory duties regarding dangerous and unvaccinated dogs under both state law and the Humboldt County Code, and those failures

proximately caused her injuries.  We affirm.  The duties Danielson identifies were not mandatory within the meaning of Government Code section 815.6, and the County is therefore immune from liability as a matter of law.

## I.  BACKGROUND

Plaintiff Candis Danielson was on defendant Donald Mehrtens's rented property in Humboldt County on January 28, 2021, when she was attacked and mauled by Mehrtens's two pit bulls, Sissy and Huss.  Danielson lost the lower half of her right leg at the knee, sustained extensive damage to her left leg, and was bitten on her right hand.  As a result of the incident, she reportedly suffered from wound infections, posttraumatic stress disorder, and emotional distress.  Apparently, Mehrtens told Danielson that Sissy was the primary aggressor, and Huss just followed Sissy's lead.  Mehrtens surrendered both dogs to Humboldt County before the County held a hearing to determine whether they were vicious or dangerous, and they were euthanized on or about February 9, 2021.  Two days later, on February 11, 2021, the County held a hearing at which Sissy and Huss were declared vicious dogs, and Mehrtens was barred from owning dogs for three years. (See Humboldt County Code,[1] §§ 547-8, 547-19.)

### A.  *The Complaint*

Danielson's first amended complaint alleged causes of action for negligence and statutory (Civ. Code, § 3342) and common law strict liability with respect to known dangerous animals against Mehrtens; negligence and premises liability against various owners and landlords of the property where the attack took place; and failure to perform a mandatory duty (Gov. Code,

---

[1] Further undesignated statutory references are to the Humboldt County Code.

2

§ 815.6) against Humboldt County. This appeal concerns solely the cause of action against the County for its alleged failure to perform a mandatory duty.

Danielson alleged a number of facts on information and belief with respect to the County's prior contacts with Mehrtens involving various dogs. In November 2010, the County dispatched an animal control officer to an address in Garberville after a report that two aggressive dogs owned by Mehrtens had gotten loose. Mehrtens told the officer that he owned three pit bulls—Gouda, Kano, and Kona—and said that the dogs must have somehow gotten out of his backyard. The County informed Mehrtens that one of the dogs was unvaccinated and unlicensed and could be declared potentially dangerous if there was a new incident. Mehrtens was told to have all of his dogs vaccinated for rabies as soon as possible. Approximately two weeks later, animal control was dispatched to another address in Garberville to deal with a report that two dogs owned by Mehrtens had aggressively trapped a woman in her own backyard. This time, the County cited Mehrtens for two dogs being at large, unvaccinated, and unlicensed. (See §§ 541-21, subd. (a), 541-32, subd. (a), 542-10.)

Another report was investigated in June 2011 that Gouda and Kona had entered the backyard of a third property, and attacked and injured another dog. The County served Mehrtens with notice of a hearing to determine whether the dogs were potentially dangerous and returned the dogs to him pending the hearing. Several days later, Gouda and Kona attacked another dog on that same property. Mehrtens voluntarily surrendered both dogs to the County prior to the hearing.

Five years later, in November 2016, Mehrtens reported to the County that he was bitten on the hand by his pit bull named Scrappy while they were playing, and he sustained a broken finger and two deep puncture wounds.

3

He was considering whether to have the dog euthanized after the expiration of the 10-day home quarantine period. A County animal control officer told Mehrtens to have Scrappy and another of his pit bulls (Sissy) vaccinated or he would be cited. In a phone call from an animal control officer the following week, Mehrtens reported he was contacting rescue groups to have the dogs spayed and was looking into rabies vaccinations. On April 1, 2017, the County learned that Scrappy had bitten someone on the leg. Apparently, Scrappy, Sissy, and another of Mehrtens's dogs escaped the property after they chewed through the foundation skirting of the house while Mehrtens was gone. Scrappy was put on a 10-day quarantine. However, after the County was notified on April 11, 2017 that Scrappy bit another person on the hand and attacked that person's dog, Mehrtens surrendered Scrappy to the County to be euthanized.

Three years later in June 2020, a County animal control officer responded to Mehrtens's home after receiving a report that Sissy had jumped on a neighbor and bit him on the shoulder. Sissy was placed on a 10-day quarantine. When the officer followed up approximately two weeks later, Mehrtens said that he had an appointment to have Sissy spayed in two weeks and that he would update the dog's license and vaccinations at that time. The officer told Mehrtens that the County would follow up again and might impose penalties if those actions were not taken.

As stated above, Danielson was attacked by Sissy and Huss in January 2021. She filed her government tort claim for damages with the County in July 2021, stating it was responsible for her injuries. The County rejected the claim the following month. In her amended complaint in superior court, Danielson averred that the County was liable for her injuries because it failed to perform mandatory duties imposed by various sections of

4

the Humboldt County Code and the Health and Safety Code that require the impound or euthanasia of dogs that are unvaccinated, unlicensed, or dangerous. She alleged the statutes were designed to protect individuals from attacks by dangerous or vicious dogs such as the attack on her by Sissy and Huss. She asserted the following failures by the County to perform its mandatory duties: failure to hold a hearing to determine whether Sissy was potentially dangerous, vicious, or a nuisance; failure to euthanize Sissy after her prior attack on a neighbor; failure to bar Mehrtens from owning dogs for three years after that prior attack; and failure to impound Sissy and Huss for being unlicensed and unvaccinated. Danielson further alleged that, had the County discharged its mandatory duties, Mehrtens would have surrendered the dogs to be euthanized long before she was injured in the vicious mauling. She made no allegation that either Sissy or Huss had rabies.

## B.  *The Demurrer*

The County demurred to Danielson's first amended complaint on the grounds that her allegations against the County failed to allege sufficient facts to state a cause of action in several respects. Most prominently, the County argued it was under no mandatory duty warranting liability under Government Code section 815.6, and the actions of its employees were immune from liability under Government Code sections 818.2 and 820.2 as discretionary acts or possible failures to enforce a statute or regulation. The County also argued that the allegations were insufficient to support causation and that the dangerous dog statutes at issue were designed to protect against the particular kind of injury alleged by Danielson. Danielson's opposition essentially contested every argument advanced by the

5

County. She requested the trial court take judicial notice of Humboldt County's status as a designated rabies area in 2018, 2019, and 2020.

After argument, the court sustained the demurrer without leave to amend. The court reasoned that, even if the Humboldt County Code had created a mandatory duty to hold a potentially dangerous dog hearing, it was uncertain that the hearing would have resulted in Sissy's destruction or quarantine. The court found speculative the assertion that Mehrtens would have surrendered Sissy to the County if faced with such a hearing. The court also concluded that the vaccination statutes created a mandatory duty to set up an impoundment system (which the County had done) but did not mandate the impound of any specific, unvaccinated animals. A judgment dismissing Humboldt County from the action was filed on October 21, 2022, with notice of entry on October 24, 2022. This timely appeal followed.

## II. DISCUSSION

Danielson contends that the trial court erred because the County's failure to perform mandatory duties proximately caused her injuries. She argues that the Humboldt County animal control officer who responded to Sissy's previous dog bite incident had a mandatory duty under local ordinance to petition the Humboldt County Animal Control Director for a hearing at that time to determine whether Sissy was potentially dangerous or a nuisance. She also claims that the County had a mandatory duty to impound Sissy under state vaccination statutes and local ordinance. We

6

disagree. The enactments identified by Danielson, and upon which she relies, do not create the mandatory duties she suggests.

### A. Standards of Review and the Possible Legal Bases of Liability

#### 1. Standard of Review for Order Sustaining Demurrer

" ' "In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." ' " (*Beasley v. Tootsie Roll Industries, Inc.* (2022) 85 Cal.App.5th 901, 910–911 (*Beasley*).) We can also consider matters which may be judicially noticed. (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814.) " 'We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse.' " (*County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1041 (*Santa Clara County*).)

#### 2. The Government Claims Act

"[T]he Government Claims Act 'is a comprehensive statutory scheme that sets forth the liabilities and immunities of public entities and public employees for torts.' " (*Santa Clara County, supra*, 14 Cal.5th at p. 1047, italics omitted.) Government Code section 815 declares the general rule of immunity for public entities under the act, providing that " '[e]xcept as otherwise provided by statute' '[a] public entity is not liable for an injury,

7

whether such injury arises out of an act or omission of the public entity . . . or any other person.' " (*Santa Clara County*, at p. 1045.)  For example, "[a] public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." (Gov. Code, § 818.2; see also Gov. Code, § 821 [companion section extending the same immunity to public employees].)

Thus, public entities and their employees are immune from tort liability for legislative action or discretionary law enforcement activity. (*Guzman v. County of Monterey* (2009) 178 Cal.App.4th 983, 996; see also Gov. Code, § 820.2 ["Except as otherwise provided by statute, a public employee is not liable for an injury resulting from [his or her] act or omission where the act or omission was the result of the exercise of the discretion vested in [him or her], whether or not such discretion be abused."]; *id.*, § 815.2, subd. (b) [public entity not liable for an injury resulting from an act or omission by an employee where that employee is immune from liability].) These statutes recognize " 'that the wisdom of legislative or quasi-legislative action, and the discretion of law enforcement officers in carrying out their duties, should not be subject to review in tort suits for damages if political responsibility for these decisions is to be retained.' (Cal. Law Revision Com. com., Deering's Ann. Gov. Code (1982 ed.) foll. § 818.2, p. 165.)" (*Guzman*, at p. 996.)

However, this broad grant of immunity is subject to the exception contained in Government Code section 815.6 for certain ministerial acts not subject to the exercise of discretion.  "Where a public entity is under a *mandatory duty imposed by an enactment* that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the

8

public entity establishes that it exercised reasonable diligence to discharge the duty."[2]  (Gov. Code, § 815.6, italics added.)  In other words, " '[a]ctions that are manifestly ministerial, because they amount only to obedience to orders which leave the officer no choice, plainly include actions governed by specific statutory or regulatory directives.  Such actions have been found nondiscretionary, and thus not immunized, because they entail the fulfillment of enacted requirements.' " (*Ortega v. Sacramento County Dept. of Health & Human Services* (2008) 161 Cal.App.4th 713, 728; see, e.g., *Scott v. County of Los Angeles* (1994) 27 Cal.App.4th 125, 141 [liability could be imposed for social worker's failure to comply with mandatory requirement of monthly face-to-face contact with child placed in foster care]; see also *State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 350 (*State Dept.*) [Sexually Violent Predators Act creates mandatory duty to have inmate referred by Department of Corrections evaluated by *two* mental health professionals].)

As our Supreme Court has explained:  "[A]pplication of [Government Code] section 815.6 requires that the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken." (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498 (*Haggis*).)  It follows that "the duty of a public entity is not mandatory if it is debatable whether the duty was adequately fulfilled." (*County of Los Angeles v. Superior Court* (2012) 209 Cal.App.4th 543, 554 (*Los Angeles County*).)  Whether an enactment creates a mandatory duty is a question of law.  (*Haggis*, at p. 499.)  This is because " '[w]hether a particular

---

[2] " 'Enactment' " for these purposes means "a constitutional provision, statute, charter provision, ordinance or regulation."  (Gov. Code, § 810.6.)

statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts.' " (*Ibid.*) "We must, therefore, examine the language, function and apparent purpose" of each cited enactment "to determine if any or each creates a mandatory duty designed to protect against the kind of injury plaintiff allegedly suffered here." (*Id.* at p. 500.)

### 3. The County's Regulation of Dangerous Animals

"Cities and counties have broad powers to regulate and control dogs within the boundaries of their jurisdictions." (*San Diego County Veterinary Medical Assn. v. County of San Diego* (2004) 116 Cal.App.4th 1129, 1134 (*San Diego County*).) Humboldt County has a comprehensive statutory framework for addressing vicious, potentially dangerous, and nuisance dogs. (§ 547-1 et seq.)[3] Most applicable in this case is section 547-8, which provides in relevant part: "If an animal control officer or a law enforcement officer has investigated and determined that there exists probable cause to believe that a dog is potentially dangerous, vicious or a nuisance, the animal control officer, or his or her designee, shall petition the Animal Control Director, or his or her appointee, for a hearing for the purpose of determining whether or not the dog in question should be declared potentially dangerous, vicious, or a nuisance."

A " 'potentially dangerous dog' " includes any unprovoked dog which (1) twice within a 36-month period when off the owner's property "engages in

---

[3] We grant the County's request for judicial notice filed in September 2023 with respect to relevant provisions of the Humboldt County Code. (Evid. Code, §§ 451, subd. (a), 453.) When we cite to provisions of the Humboldt County Code not encompassed within the County's judicial notice request, we take judicial notice on our own motion. (Evid. Code, § 459, subd. (a).)

any behavior that requires a defensive action by any person to prevent bodily injury"; (2) bites a person causing a less-than-severe injury; or (3) twice within a 36-month period when off the owner's property attacks a domestic animal causing injury.  (§ 547-3.)  A dog is considered "vicious" under the Humboldt County Code if it is involved in dog fighting; has already been declared potentially dangerous and later engages in behavior similar to the behavior causing the potentially dangerous designation; or "when unprovoked, in an aggressive manner inflicts severe injury or kills a human being."  (§ 547-2.)  " 'Severe injury' " is defined in the Humboldt County Code as "any physical injury to a human being that results in muscle tears, broken bones, or disfiguring lacerations or requires multiple sutures or corrective cosmetic surgery."  (§ 547-5.)

A " '[p]ublic nuisance dog' " is "any dog which gives offense to human senses or substantially interferes with the rights of persons, other than its owner or keeper, to the enjoyment of life or property."  (§ 547-4.)  Nonexclusive examples of public nuisance dogs include a dog which (1) has been cited or impounded three times within a 36-month period for being off the owner's property in violation of state or local law "prohibiting the running at large of dogs"; (2) causes damage to property other than its owner's; (3) harasses or intimidates persons on public or private property other than property owned or controlled by its owner; (4) chases vehicles repeatedly while off its owner's property; (5) makes disturbing noises causing the discomfort of neighbors or others in the vicinity of the property where the dog is maintained; (6) has been allowed by its owner to produce odors which cause discomfort to persons in the vicinity of the property where the dog is maintained; (7) is one of a number of dogs or other animals maintained on the property owned or controlled by its owner so as to be offensive to persons

11

or dangerous to the public health, safety or welfare; or (8) when unprovoked, has "bitten any person who is lawfully on the owner's or keeper's property causing minor injury." (§ 547-4, subds. (a)–(f).)

"If upon investigation it is determined by the animal control officer or law enforcement officer that probable cause exists to believe the dog in question poses an immediate threat to public safety the animal control officer or law enforcement officer *may* seize and impound the dog pending the hearing . . . . If public safety is adequately assured, the animal control officer of the county *may* permit the dog to be confined at the owner's expense in an approved kennel or veterinary facility or on the owner's premises." (§ 547-14, italics added.)

Following a hearing, a dog determined to be potentially dangerous or vicious must be properly licensed and vaccinated at twice the usual cost, with the dog's status included in the licensing records. (§ 547-16, subd. (a).) When on the owner's property, it must be either indoors or in an approved enclosure. A potentially dangerous dog may be off the owner's property only if it is restrained by a "substantial leash" or within an enclosed vehicle. (*Id.*, subd. (b).) A vicious dog off the owner's property must be "securely muzzled and restrained, with a leash sufficient to restrain the dog, having a minimum tensile strength of 300 pounds and not exceeding three feet in length," and under the owner's direct control and supervision. (§ 547-17, subd. (h).) An owner of a vicious dog must also comply with numerous other conditions, including posting a sign on the premises and procuring liability insurance. (§ 547-17.)

A vicious dog may be destroyed if it is determined that the dog's release would create a significant threat to the public health, safety, and welfare; the owner of a vicious dog violates the conditions for keeping such a dog; or a

12

vicious dog, when unprovoked, subsequently attacks or otherwise injures a person.  (§ 547-18.)  The owner of a dog determined to be a vicious dog "may be prohibited by the Animal Control Director from owning, possessing, controlling, or having custody of any dog for a period of up to three years," if it is found that such ownership or possession "would create a significant threat to the public health, safety, and welfare."  (§ 547-19.)

When a dog is declared to be a public nuisance dog at a hearing, the hearing officer "may impose any reasonable conditions upon the ownership of the dog which shall correct the circumstances which created the nuisance."  (§ 547-20, subd. (c).)  The dog must be delivered to the animal control officer for impoundment until the owner satisfies the animal control officer that they have taken steps to abate the nuisance.  Failure to abate the nuisance within five working days following impoundment results in forfeiture of ownership of the dog.  (*Id.*, subd. (d).)

Violations of the Humboldt County Code relating to vicious or potentially dangerous dogs are misdemeanors, and violations related to public nuisance dogs are infractions.  (§ 547-22.)  If a potentially dangerous or public nuisance dog has no additional prohibited behaviors for 36 months, the dog "shall be removed" from the list of potentially dangerous or public nuisance dogs.  (§ 547-21.)  The dog may be taken off the list earlier if the owner demonstrates a change in circumstances, such as dog training that mitigates the public risk.  (*Ibid*.)

4. **State and Local Vaccination and Licensing Statutes**

State and local law contain provisions requiring that dogs be licensed and vaccinated.  In a chapter entitled "Rabies Control," Health and Safety Code section 121690 provides that cities and counties in rabies-designated areas are responsible for ensuring that dog owners secure a dog license and

13

have their dogs vaccinated for rabies. (Health & Saf. Code, § 121690, subds. (a) & (b); see also *San Diego County*, *supra*, 116 Cal.App.4th at p. 1134.) Generally speaking, a person who possesses any animal in violation of the provisions of the chapter is guilty of an infraction. (Health & Saf. Code, § 121630.) Health and Safety Code section 121690, subdivision (d) (hereafter section 121690(d)) further states: "A dog in violation of this chapter or any additional provisions that may be prescribed by a local governing body shall be impounded, as provided by local ordinance." In addition, Health and Safety Code section 121690, subdivision (e) (hereafter section 121690(e)) provides: "The governing body of each city, city and county, or county shall maintain or provide for the maintenance of an animal shelter system and a rabies control program for the purpose of carrying out and enforcing this section."

The Humboldt County Code has two chapters, including the provisions for potentially dangerous or vicious dogs, that address possible impoundment of dogs. Chapter 1 of division 4 of title V, entitled "Regulating and Licensing Dogs," appoints the Humboldt County Sheriff as the "Animal Control Officer" (§ 541-12), authorizes the appointment of deputies (§§ 541-11, 541-13), requires unspayed female dogs to be confined when in breeding condition (§ 541-25), requires all dogs over four months of age to be licensed (§ 541-32, subd. (a)), requires proof of rabies vaccination prior to licensing (*id.*, subd. (b)), and authorizes creation of an animal control center under the control of the Animal Control Officer for impound purposes (§ 541-61). Dogs running at large may be impounded at the discretion of the Animal Control Officer. (§§ 541-21, subd. (a), 541-26.) With one exception not relevant here, violation of any of the provisions of this chapter is an infraction. (§§ 541-32, subd. (c), 541-81.)

14

Chapter 2 of division 4 of title V of the Humboldt County Code, entitled "Compulsory Rabies Vaccination," requires periodic vaccination of all dogs over four months of age with an antirabies vaccine. (§ 542-3.) Pursuant to section 542-13: "The Animal Control Officer shall operate a pound for the purpose of isolating dogs that have bitten human beings. In each instance the dog shall be held for such time as is prescribed by the [Humboldt County] Health Officer; provided that when the Health Officer deems it proper, a licensed and vaccinated dog that has bitten a human being may be quarantined on the owner's premises or in the care of a veterinarian or in a licensed kennel." Violation of any of the provisions of this chapter is a misdemeanor. "Every person convicted of a violation of any such provision shall be punished by a fine of not more than Five Hundred Dollars ($500.00) or less than Twenty-five Dollars ($25.00), or by imprisonment in the County Jail for not more than six (6) months, or by both such fine and imprisonment." (§ 542-14.)

## B. *Neither the Humboldt County Code nor the Health and Safety Code Impose a Mandatory Duty in This Case*

### 1. **Hearings Regarding Potentially Dangerous Dogs**

Danielson first argues that section 547-8 placed a mandatory duty on Humboldt County to petition for a hearing regarding whether Sissy was potentially dangerous or a nuisance after investigating the report that Sissy had bitten a neighbor in June 2020, seven months before Danielson was seriously attacked. She says the failure to convene such a hearing was a breach of duty. According to Danielson, the use of "shall petition" in section 547-8 makes the duty to convene a hearing obligatory. Once the officer investigated, it would have been clear that probable cause existed to believe Sissy was a potentially dangerous or nuisance dog because probable cause is an objective standard.

15

In making this argument, Danielson seeks to distinguish *Los Angeles County*. But *Los Angeles County* is not only instructive, it is persuasive. There, the question was whether the county had a mandatory duty under local ordinance to capture and take into custody two privately owned pit bulls before they attacked one of the plaintiffs in that case. (*Los Angeles County*, *supra*, 209 Cal.App.4th at p. 546.) Dog owners were required by local ordinance to comply with 21 conditions, including the following requirement: " 'No animal shall be allowed to constitute or cause a hazard, or be a menace to the health, peace or safety of the community.' " (*Id.* at p. 547.) Upon a violation of the ordinance, " 'the director [of the County Department of Animal Care and Control] shall capture and take into custody [¶] . . . [¶] . . . [a]ny animal being kept or maintained contrary to the provisions of this Division 1, the Animal Control Ordinance, or any other ordinance or state statute.' " (*Ibid.*, italics omitted.) The appellate court concluded that this scheme created no mandatory duty, reasoning that "what constitutes a 'hazard' or a 'menace to the health, peace or safety of the community' is an inherently subjective question which requires the exercise of considerable discretion based on consideration of a host of competing factors." (*Id.* at p. 550.)

The *Los Angeles County* court then considered whether a local ordinance, identical in all relevant respects to section 547-8 at issue in this case, created a mandatory duty to petition for a potentially dangerous dog hearing because the dog involved had previous incidents in the months preceding the plaintiff's injury. (*Los Angeles County*, *supra*, 209 Cal.App.4th at pp. 547–548, 553.) The *Los Angeles County* court concluded there was no mandatory duty. It explained: "This provision obligates the County to file a petition in the superior court when an officer has determined a dog is

16

'potentially dangerous.' But there is no obligation to act until an animal control officer or a law enforcement officer has 'determined' that there is probable cause to believe 'the dog in question' is 'potentially dangerous or vicious.' In this case plaintiffs presented no evidence that such a determination had been made." (*Id.* at p. 553.)

The court went on to explain that "[a]n enactment requiring a public entity to conduct an investigation under certain circumstances does not, without more, impose a mandatory duty to take certain specified action." (*Los Angeles County*, *supra*, 209 Cal.App.4th at p. 554; *ibid.*, citing *MacDonald v. California* (1991) 230 Cal.App.3d 319, 331 [" '[E]xecution of the [statutory] duties to visit day care homes and investigate complaints necessarily involves some exercise of discretion in deciding what action to take, and when, to evaluate and assess a particular situation. A party disagreeing with or harmed by the exercise or nonexercise of such discretion has not explicitly been provided any remedy in damages by the Legislature. [¶] Moreover, . . . a mandatory duty to investigate is not the same as a mandatory duty to take action after the investigation.' "].)

*Los Angeles County* is on all fours with this case, and we adopt its analysis. Section 547-8 requires that an animal control officer petition for a potentially dangerous dog hearing only *if* he or she has investigated and *determined* "that there exists probable cause to believe that a dog is potentially dangerous, vicious or a nuisance." Thus, whether to investigate is discretionary, and there are no explicit instructions directing how such an investigation should be conducted, how long it can continue, or what must be done at its conclusion. Under these circumstances, the ordinance creates no mandatory duty because it presents " 'debatable issues over whether the

17

steps taken by the [county] *adequately* fulfilled its obligation.' " (*Los Angeles County*, *supra*, 209 Cal.App.4th p. 550.)

Danielson seeks to distinguish *Los Angeles County* because, in that case, the government presented evidence that it did not know which of the defendant's many dogs was involved in previous incidents before the plaintiff was attacked. (*Los Angeles County*, *supra*, 209 Cal.App.4th at p. 553.) While this is true, it is a distinction without a difference. Just as there was no evidence in *Los Angeles County* supporting a conclusion that a probable cause determination had been made, there is similarly no evidence here. Indeed, there is some evidence that suggests the animal control officer had not finished his investigation. At his follow-up visit two weeks after the 2020 dog bite incident, Mehrtens told the officer he was in the process of getting Sissy spayed, licensed, and vaccinated. The officer responded that the County would consider assessing penalties if those actions were not taken, but the record contains no further evidence regarding the investigation. There is no evidence that the officer ever concluded the investigation or made a probable cause determination.

Danielson's argument that probable cause is an objective standard and that the record is clear Sissy fell within the definition of potentially dangerous or nuisance dogs misses the mark. We agree that Sissy *could have* been deemed potentially dangerous in June 2020 for an unprovoked bite of a person causing injury. (§ 547-3.) However, this possibility does not compel the conclusion that the animal control officer had completed his investigation and actually reached that conclusion. Rather, the inquiry necessarily involved exercises of discretion in deciding what actions were warranted, when to take them, and how to evaluate and assess the situation. Here, it seems clear that Mehrtens's expressed willingness to get Sissy spayed,

18

vaccinated, and licensed bore on the officer's decision whether to make the probable cause finding which would trigger a dangerous dog hearing. The evidence of Mehrtens's history of dog ownership might also be relevant in this context.

Moreover, our "[a]nalysis of duty occurs at a higher level of generality" than urged by Danielson. (See *Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077, 1084; *id.* at p. 1083, citing Rest.3d Torts, Liability for Physical and Emotional Harm, § 7, com. a, p. 78 [" 'No-duty rules are appropriate only when a court can promulgate relatively clear, categorical, bright-line rules of law applicable to a general class of cases.' "].) As the County pointed out in its briefing, many determinations under section 547-8 are significantly more complex than the one at issue here and involve "inherently subjective question[s] which require[] the exercise of considerable discretion based on consideration of a host of competing factors." (*Los Angeles County*, *supra*, 209 Cal.App.4th at p. 550.) As just one example, determining under section 547-4 whether a dog "gives offense to human senses or substantially interferes with the rights of persons, other than its owner or keeper, to the enjoyment of life or property" is clearly subjective and based on consideration of many competing factors. There is considerable discretion involved both in the scope of an investigation and in whether and how to make a probable cause determination.

Finally, we agree with Danielson that the use of "shall" in section 547-8 creates a mandatory duty for an animal control officer or a law enforcement officer to petition for a dangerous dog hearing, but that is *only after* the officer has exercised his or her discretion in conducting the investigation and has concluded there is probable cause. We view section 547-8 as being similar to the statute said to create a mandatory duty in *Haggis*, *supra*,

19

22 Cal.4th 490. That case involved several local ordinances regarding development of property in landslide zones. (*Id.* at p. 495.) One such provision stated: " 'Whenever the Superintendent of Building determines by inspection that a property, either improved or unimproved, is unstable because of landslide, subsidence or inundation he shall give written notice to the owner that the property is substandard. Notice shall specify conditions creating substandard classification. [¶] *At the time of giving the above mentioned notice, the Superintendent of Building shall also file with the office of the County Recorder a certificate that the property is substandard and that the owner thereof has been so notified. The certificate shall specify conditions creating substandard classification.*' " (*Id.* at p. 501, italics added by *Haggis*.)

Our Supreme Court found a mandatory duty under the ordinance to record a certificate of substandard condition, but *only after* the discretionary decision had been made that the property was unstable. The court stated: "We agree that the determinations whether a property is unstable, and what conditions make it so and thus must be remedied, rest, under the ordinance, with the judgment and discretion of the superintendent of building or his or her staff. But once these determinations have been made—as they allegedly were in this case in 1966 and 1970—the ordinance does not contemplate any further discretionary decision as to whether to record the certificate of substandard condition; rather, the ordinance commands that such a certificate be recorded when the owner is given notice of the substandard condition. In this respect—the only respect pertinent to plaintiff's first cause of action—[the provision] create[d] a mandatory duty." (*Haggis, supra,* 22 Cal.4th at p. 502.) So too here, once an officer conducts a discretionary investigation and makes a probable cause determination, section 547-8 mandates that officer petition for a dangerous dog hearing. But this does not

save Danielson's complaint, as there is no evidence here that the investigation was ever completed or a probable cause determination made. Rather, on this record, there was no mandatory duty to petition for a dangerous dog hearing.

### 2. Impoundment for Failure to Vaccinate or License

Danielson also claims the County had a mandatory duty to impound Sissy under county ordinances and the Health and Safety Code provisions mandating rabies vaccination. She asserts that, after Sissy bit Mehrtens's neighbor in June 2020 and Mehrtens told the responding officer that Sissy was neither licensed nor vaccinated, the officer had a mandatory duty to impound the dog under section 121690(d) and Humboldt County Code section 542-13. We disagree.

Nothing in the Humboldt County Code mandates impoundment under these circumstances. Humboldt County Code provisions with respect to the regulation and licensing of dogs authorize creation of an animal control center under the control of the Animal Control Officer for impound purposes. (§ 541-61.) But only dogs running at large may be impounded at the discretion of the Animal Control Officer. (§§ 541-21, 541-26.) In addition, with respect to potentially dangerous dogs, section 547-14 states: "If upon investigation it is determined by the animal control officer or law enforcement officer that probable cause exists to believe the dog in question poses an immediate threat to public safety the animal control officer or law enforcement officer *may* seize and impound the dog pending the hearing." (Italics added.) This provision is clearly discretionary as it does not mandate seizing or impounding any dog.

Finally, the chapter on compulsory rabies vaccination in the Humboldt County Code mandates: "The Animal Control Officer shall operate a pound

21

for the purpose of isolating dogs that have bitten human beings. In each instance, however, the dog shall be held *for such time as is prescribed by the Health Officer.*" (§ 542-13, italics added.) Danielson argues that this language creates a mandatory duty to impound unvaccinated dogs that have bitten someone. However, "[a] mandatory duty is created only when an enactment requires an act that is clearly defined and not left to the public entity's discretion or judgment. [Citation.] Such an act is mandated only to the extent of the enactment's precise formulation. When the enactment leaves implementation to an exercise of discretion, 'lend[ing] itself to a normative or qualitative debate over whether [the duty] was adequately fulfilled,' an alleged failure in implementation will not give rise to liability." (*State Dept.*, *supra*, 61 Cal.4th at p. 350; accord, *Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 894 [" ' "the mandatory nature of the duty must be phrased in explicit and forceful language" ' "].) Here, section 542-13 leaves the length of impoundment to the discretion of the Humboldt County Health Officer, which presumably could include a decision not to impound at all. Since the length of any impoundment is entirely within the discretion of a public official, section 542-13 does not create a mandatory duty.

Thus, Danielson can prevail on this point only if Health and Safety Code section 121690 creates a mandatory duty to impound unvaccinated or unlicensed dogs. It does not. With exceptions not relevant here, the statute provides generally that all dogs must be licensed and vaccinated against rabies. (Health & Saf. Code, § 121690, subds. (a) & (b).)[4] Section 121690(d)

---

[4] The requirements of Health and Safety Code section 121690 are only applicable in "rabies areas." A rabies area is "any area not less than a county as determined by the [State Director of Health Services] within a region where the existence of rabies constitutes a public health hazard, as found and

22

states: "A dog in violation of this chapter or any additional provisions that may be prescribed by a local governing body *shall be impounded*, as provided by local ordinance." (Italics added.) According to Danielson, the italicized language in section 121690(d) creates a mandatory duty to impound dogs that are not licensed or vaccinated in accordance with subdivisions (a) and (b).

Danielson also argues that section 121690(e) creates a mandatory duty. Pursuant to section 121690(e): "The governing body of each city, city and county, or county *shall maintain* or provide for the maintenance of an animal shelter system and a rabies control program for the purpose of carrying out and enforcing this section." (Italics added.) Thus, she argues there are two mandatory duties in section 121690, a duty to impound unvaccinated dogs contained in section 121690(d) and a duty to implement a local regulatory scheme requiring impoundment contained in section 121690(e).

In addition to the use of the word "shall" in these two subdivisions of the statute, Danielson relies on *Department of Public Health v. Board of Supervisors* (1959) 171 Cal.App.2d 99, 101 (*Dept. of Health*), in which the state Department of Health sought a writ of mandate to compel various boards of supervisors and city councils who had failed or refused to adopt ordinances under a predecessor to section 121690(e) to do so. (*Dept. of*

---

declared by the director." (Health & Saf. Code, § 121585.) Designation of a rabies area lasts for one year, unless continued or terminated prior to its conclusion. (*Ibid.*) Danielson filed a request for judicial notice in this action in June 2023 asking us, among other things, to take judicial notice of official documents declaring Humboldt County a "rabies area" during 2018, 2019, and 2020. For purposes of this opinion, we will assume without deciding that Humboldt County was a rabies area during relevant timeframes. We therefore deny the request for judicial notice in its entirety as unnecessary to our decision.

*Health*, at pp. 101–102.) The court concluded that the former statute "clearly set[] forth the duty of the governing body of each city, city and county, or county to provide for the maintenance of a pound system and a control program for the purpose of carrying out and enforcing provisions of said section."[5] (*Dept. of Health*, at p. 104.) In other words, "[t]he duty imposed under [the prior statute was] absolute. The local agencies in carrying out state affairs perform a mere ministerial duty." (*Id.* at p. 105.) Since section 121690(e) was found to create a mandatory duty in *Dept. of Health*, Danielson posits, we should reach the same conclusion with respect to section 121690(d).

We have no quarrel with the analysis in *Dept. of Health*. But it does not compel a conclusion that section 121690(d) creates a mandatory duty to impound unvaccinated dogs. Preliminarily, and contrary to Danielson's argument, our Supreme Court has concluded that the use of "shall" in the Health and Safety Code is not always mandatory. (*Guzman v. County of Monterey*, *supra*, 46 Cal.4th at p. 899 [the inclusion of "shall" in a section of the Health and Safety Code "does not necessarily create a mandatory duty; there may be 'other factors [that] indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion' "]; accord, *AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 701 [" 'Even if mandatory language appears in [a] statute creating a duty, the duty is discretionary if

---

[5] As adopted and in effect at the time *Dept. of Health* was decided, the provision provided: "It shall be the duty of the governing body of each city, city and county, or county to maintain or provide for the maintenance of a pound system and a rabies control program for the purpose of carrying out and enforcing the provisions of this section." (Health & Saf. Code, former § 1920, subd. (e); Stats 1957, ch. 1781, § 2, p. 3175.)

the [public entity] must exercise significant discretion to perform the duty.' "].)  More importantly, however, Danielson ignores critical differences between section 121690(d) and (e).

As stated above, section 121690(d) provides:  "A dog in violation of this chapter or any additional provisions that may be prescribed by a local governing body shall be impounded, as provided by local ordinance."  Danielson refers to Health and Safety Code section 121695, which clarifies that local governments have the discretion to enact more stringent ordinances in this context, to argue that any more stringent local ordinance must provide for the impoundment of unvaccinated or unlicensed dogs.  But her proposed construction ignores the comma before the concluding phrase "as provided by local ordinance."  A fair interpretation of the statutory language is that a local entity has the authority to impound dogs in violation of Health and Safety Code section 121690 or related local provisions *to the extent* impoundment is provided for by local ordinance.  In other words, violations of state law or local ordinance are punishable by impound to the extent it is provided as a remedy in a local law.[6]

---

[6]  Although we base our conclusion on the plain language of Health and Safety Code section 121690, we note that the legislative history of the statute supports our construction.  As originally adopted in 1957, subdivision (d) stated:  "Any dog in violation of the provisions of this article, and such additional provisions as may be prescribed by any local governing body, shall be impounded as provided by local ordinance."  (Health & Saf. Code, former § 1920, subd. (d); Stats. 1957, ch. 1781, § 2, p. 3175.)  In 1986, the statute was amended as follows:  "Any dog in violation of the provisions of this article and any additional provisions which may be prescribed by any local governing body, shall be impounded, as provided by local ordinance."  (Health & Saf. Code, former § 1920, subd. (d); Stats. 1986, ch. 664, § 3, p. 2244.)  Finally, in 1999, the Legislature removed the extraneous comma after "governing body," to leave us with the current version of section 121690(d).  (Stats. 1999,

25

Here, as we explained in part II.B.1., *ante*, under local ordinance a dog that has bitten a person may be impounded in Humboldt County at the discretion of the health officer.  Thus, Danielson cannot establish that Humboldt County had a mandatory duty to impound Sissy for being unvaccinated or unlicensed after she bit Mehrtens's neighbor in 2020.

Danielson's injuries in this case were no doubt severe and likely life altering.  We sympathize with her desire to be compensated for her injuries. But she has failed to identify any statute creating a mandatory duty which was breached by the County in this context, a situation that cannot be rectified by further amendment of the pleadings.  Because the lack of a mandatory duty is dispositive, we will not consider Danielson's other arguments.  We do, however, agree with the trial court that her claim raises a serious question of causation.  The trial court correctly granted Humboldt County's demurrer without leave to amend because the County is immune from the tort liability alleged in Danielson's complaint.  (See Gov. Code, §§ 815.2, 818.2, 820.2, 821.)

## III.  DISPOSITION

The judgment is affirmed.  Each party shall bear their own costs on appeal.

---

ch. 418, § 2, p. 2783.)  In our view, all of these iterations group together state and local violations, which are subject to impoundment "as provided by local ordinance."  (§ 121690(d).)

SIGGINS, J.*

WE CONCUR:

BANKE, ACTING P. J.

LANGHORNE WILSON, J.

A166787
*Danielson v. County of Humboldt*

---

* Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

27

Trial Court:      Humboldt County Superior Court

Trial Judge:      Timothy A. Canning

Counsel:

Steven B. Stevens, a Prof. Corp., Steven B. Stevens; Conal F. Doyle; and Zachary Zwerdling for Plaintiff and Appellant.

The Mitchell Law Firm, LLP, Nicholas R. Kloeppel and Karen J. Roebuck for Defendant and Respondent.